TERRENCE L. KUBICEK ET AL., APPELLANTS, V.
CITY OF LINCOLN, NEBRASKA, ET AL., APPELLEES.
658 N.W.2d 291

Filed March 21, 2003. No. S-01-1036.

Terrence L. Kubicek, pro se, and for appellants.

Dana W. Roper, Lincoln City Attorney, and Joel D. Pedersen for appellee City of Lincoln.

Richard R. Wood for appellee Board of Regents of the University of Nebraska.

Steven G. Seglin for appellee Lower Platte South Natural Resources District.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Appellants, Terrence L. Kubicek; Homestead Reliance, Inc.; Malone Neighborhood Association, Inc.; and One Community Alliance, filed this suit seeking a preliminary injunction, declaratory relief, and a writ of mandamus against appellees, the City of

Lincoln, Nebraska; Board of Regents of the University of Nebraska; and the Lower Platte South Natural Resources District. Appellants challenge the Lincoln City Council's creation and participation in the Joint Antelope Valley Authority (JAVA). Appellants and appellees both filed motions for summary judgment. The district court granted appellees' motion. Appellants filed this appeal. We moved the case to our docket pursuant to our statutory authority. We conclude that the city properly entered into JAVA, pursuant to an interlocal agreement, as permitted by state statute and the city charter. Therefore, we affirm the order of the district court.

## BACKGROUND

The material facts are not in dispute. Both Neb. Const. art. XV, § 18, and the Interlocal Cooperation Act (ICA), Neb. Rev. Stat. § 13-801 et seq. (Reissue 1997), permit subdivisions and governments in the State of Nebraska to cooperate with one another for the purpose of jointly exercising governmental authority and responsibilities. Furthermore, the Lincoln City Charter, art. II, § 5 (1992) (political subdivision provision) permits the city to enter into interlocal agreements with other political subdivisions. In 2000, appellees formed JAVA by entering into an interlocal cooperation agreement. The Lincoln City Council approved and authorized the city's participation in JAVA by resolution, without first seeking voter approval.

JAVA is an administrative entity created and empowered to implement the Antelope Valley Project (project). JAVA is composed of three partners—appellees. JAVA's business affairs are conducted by an administrative board composed of one representative for each partner. Each member of the administrative board has one vote, and JAVA may take action only upon the unanimous vote of the board. The project generally includes community revitalization, transportation, and drainage-flood control improvements along the Antelope Creek. JAVA was formed in order to create a joint entity that could properly address, in a timely and coordinated fashion, all the issues and detailed decisions needed to be made on the interrelated and multijurisdictional aspects of the project over a multiyear timeframe. Before the creation of JAVA, each partner had the statutory

authority to implement certain aspects of the project. Together, through JAVA, the three partners have complete statutory authority to implement the whole project.

According to the interlocal cooperation agreement, the project has two components: "Phase One" is the preparation period, and "Phase Two" is the implementation period. The preparation period was to commence in the spring of 2000 and take approximately 6 to 24 months to complete, followed by the implementation period which is estimated to take 6 to 10 years to complete. During the implementation period, each partner is to transfer to JAVA, or the city, the necessary property interest to enable JAVA to carry out its responsibilities. After completion of the project, JAVA is to transfer all real estate and improvements thereon to the appropriate individual partner. At such time, the operation, maintenance, repairs, and inspection will be the sole responsibility of each individual partner. The project's estimated financial plan includes federal, state, city, and private funding. JAVA's enumerated powers, as set forth in the interlocal cooperation agreement, include, but are not limited to, the following: the power to receive gifts, grants, bequests, devises, exchanges, and appropriations; to contract; to acquire property, including by condemnation if necessary; to relocate residences, buildings, and structures; to lease or purchase material and equipment; to borrow, mortgage, pledge, or secure loans; to construct; to bond its appropriated revenue and assets; and to sue and be sued.

Appellants appeared before the city council, challenging the legality of JAVA absent an enabling plebiscite by the electorate. Appellants requested that the matter be subject to voter approval. Appellants' request was based on their interpretation of the Lincoln City Charter, art. IV, § 25 (1966) (department provision). The city council denied appellants' request for a vote by the electorate. Thereafter, in January 2001, appellants filed for a preliminary injunction, declaratory relief, and writ of mandamus in the district court. Appellants' motion for a preliminary injunction was denied by the district court. In March, both appellants and appellees filed motions for summary judgment. In granting appellees' motion, the district court determined that the department provision of the city charter did not apply to the city's authority to enter into interlocal agreements. The court held that

the city's authority to form interlocal agreements was found exclusively in the political subdivision provision of the city charter and that no further vote of the electorate was necessary.

## ASSIGNMENTS OF ERROR

The essence of appellants' argument is whether the city has the authority to form or participate in a new authority, JAVA, through an interlocal agreement without first obtaining voter approval. Specifically, appellants assign, consolidated and rephrased, that the district court erred in (1) granting summary judgment in favor of appellees, while denying appellants' motion for summary judgment; (2) failing to enjoin the city from participating in JAVA pending a plebiscite per the city charter; (3) failing to issue a writ of mandamus ordering the city to conduct an election regarding the city's participation in JAVA; (4) denying appellants' motion to join JAVA as a necessary party; (5) denying appellants' motion for declaratory judgment based on the facts of the case and issues of law; (6) joining the Board of Regents of the University of Nebraska and the Lower Platte South Natural Resources District as necessary parties; (7) failing to disclose the fact that the judge's spouse is a faculty member at the University of Nebraska; (8) ignoring the issue of whether the city council's action authorizing creation of and participation in JAVA by resolution rather than by ordinance is a lawful exercise of power delegated to a home rule city; (9) applying the ICA, which is permissive and subject to local procedural requirements, as not subject to the procedural requirements of the city charter requiring a plebiscite as a condition precedent when the city council creates a department, board, agency, or authority; (10) subrogating the superior reservation of the power of a plebiscite by the electorate expressed in the city charter to later provisions that merely enabled the city to pursue interlocal agreements; and (11) failing to award appellants costs and reasonable attorney fees.

## STANDARD OF REVIEW

In reviewing an order granting a motion for summary judgment, the question is not how a factual issue is to be decided, but, instead, whether any real issue of material fact exists. *Shlien v. Board of Regents*, 263 Neb. 465, 640 N.W.2d 643 (2002); *Bates v. Design of the Times, Inc.*, 261 Neb. 332, 622 N.W.2d 684

(2001). In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442, 590 N.W.2d 380 (1999); *Dvorak v. Bunge Corp.*, 256 Neb. 341, 590 N.W.2d 682 (1999).

■ Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *In re Application of Neb. Pub. Serv. Comm.*, 260 Neb. 780, 619 N.W.2d 809 (2000).

## ANALYSIS

The main issue in this case, as asserted by appellants, is whether the city can form a new authority, JAVA, through an interlocal agreement without a vote of the electorate. To resolve this issue, we examine the city's statutory authority to join interlocal agreements.

Nebraska permits interlocal agreements pursuant to the ICA. See § 13-801. The ICA's purpose is to permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on the basis of mutual advantage. See § 13-802. One provision within the act provides:

> The provisions of the Interlocal Cooperation Act shall be deemed to provide an additional, alternative, and complete method for the doing of the things authorized by the act and shall be deemed and construed to be supplemental and additional to, and not in derogation of, powers conferred upon political subdivisions, agencies, and others by law. *Insofar as the provisions of the Interlocal Cooperation Act are inconsistent with the provisions of any general or special law, administrative order, or regulation, the provisions of the Interlocal Cooperation Act shall be controlling.*

(Emphasis supplied.) § 13-825.

The city charter also allows for interlocal cooperation as provided by the political subdivision provision, enacted in 1992, which provides:

> **Sec. 5. Join Other Political Subdivisions.** The city shall have the power to join with other political or governmental

subdivisions, agencies, or public corporations, whether federal, state or local, or with any number or combination thereof, by contract or otherwise, as may be permitted by the laws of the State of Nebraska, in the joint ownership, operation, or performance of any property, facility, power or function, or in agreements containing provisions that one or more thereof operate or perform for the other or others.

. . . .

*The provisions of this section shall govern and apply notwithstanding any existing provisions of this charter to the contrary.*

(Emphasis supplied.) Lincoln City Charter, art. II, § 5 (1992).

Appellants do not challenge the constitutionality of JAVA or the city's authority to enter into interlocal agreements. Appellants allege only that the department provision of the city charter confers an absolute duty on the city to subject the city's participation in JAVA to a vote of the electorate. In 1966, the department provision of the city charter was enacted, which provision states:

**Sec. 25. Assignment of Departmental Duties.** In the event that the city is to undertake any new functions or programs, the council, after hearing the recommendation of the mayor, and after a favorable vote of the people where such vote is required by this charter, may by ordinance assign such new functions or programs to established departments, but to the extent that such assignments would not be practicable, the council may create additional departments. Any such additional department shall in all respects be subject to the provisions of this charter.

. . . .

Administrative boards, commissions, and authorities may be established by ordinance when such are deemed necessary by the council to administer programs and functions, *but no such board, commission or authority which is to be assigned responsibility for the control or management of property, personnel, facilities, equipment or finances shall be established until such action has been approved by a majority vote of the electors.* The provisions of this section requiring a vote shall apply regardless of whether the

establishment of the proposed administrative board, commission, or authority is based on a permissive law of the State of Nebraska, the exercise of the city's home rule powers, or both.

(Emphasis supplied.) Lincoln City Charter, art. IV, § 25 (1966).

■ In support of their argument, appellants correctly assert that a provision of a home rule charter takes precedence over a conflicting state statute in instances of local municipal concern. See *Omaha Parking Authority v. City of Omaha*, 163 Neb. 97, 77 N.W.2d 862 (1956). Nevertheless, in this case, appellants' assertion is misplaced because the city charter does not conflict with the state statute allowing interlocal agreements. The alleged conflict in this case arises between two city charter provisions, the political subdivision provision and the department provision. Our analysis focuses on the effect of each provision.

### LINCOLN CITY CHARTER

■ The city adopted the city charter in 1917, pursuant to Neb. Const. art. XI, § 2. This provision permits a city having a population of more than 5,000 to "frame a charter for its own government, consistent with and subject to the constitution and laws of this state." Neb. Const. art. XI, § 2. A charter defining powers and duties is essential to the creation and existence of a municipal corporation. 2A Eugene McQuillin, The Law of Municipal Corporations § 9.01 (3d ed. 1996). While legislative charters are always grants of power that are strictly construed, home rule or constitutional charters may be either grants of power or limitations of power. *Id.*, § 9.08. The current city charter is a limitations of power charter, not a grant of powers charter. See *In re Application of Lincoln Electric System, ante* p. 70, 655 N.W.2d 363 (2003).

In 1966, the city charter was amended by a majority vote of the electorate to include the department provision, which applies "[i]n the event that the city is to undertake any new functions . . . ." Lincoln City Charter, art. IV, § 25 (1966). The provision requires a vote of the electorate when the city council establishes by *ordinance* administrative boards, commissions, and authorities who are to be assigned responsibility for the control or management of property, personnel, facilities, equipment, or finances.

In 1992, the people of the city once again amended the city charter to include the political subdivision provision. This provision allows the city to join with other political subdivisions by contract or otherwise, in the joint ownership, operation, or performance of any property, facility, power, or function. The provision is silent as to requiring a vote of the electorate before the city can join with other political subdivisions.

Appellants allege that JAVA is a new authority as defined by the department provision of the city charter and that thus, voter approval is required. Appellants also allege that the city's approval of JAVA by resolution delegated significant legislative powers that may be delegated and exercised only by ordinance pursuant to state law and the city charter. Appellees, on the other hand, contend that the city's participation in JAVA is exclusively authorized pursuant to the political subdivision provision and that JAVA was properly entered into by resolution because the interlocal agreement was administrative in nature. We agree with appellees.

An ordinance is distinguishable from a resolution. The term *ordinance* is generally used to designate a local law of a municipal corporation, duly enacted by the proper authorities, prescribing general, uniform, and permanent rules of conduct, relating to the corporate affairs of the municipality. 5 Eugene McQuillin, The Law of Municipal Corporations § 15.01 (3d ed. 1996). A resolution is generally not the equivalent of an ordinance, but is rather an act of a temporary character; is ordinarily sufficient for council action on ministerial, administrative, or executive matters; and does not rise to the dignity of an ordinance. Charles S. Rhyne, The Law of Local Government Operations § 8.1 (1980 & Supp. 1985). *Sommerfeld v. City of Seward*, 221 Neb. 76, 375 N.W.2d 129 (1985). If an ordinance enacts a law or lays down a course of policy to guide the citizens, there can be no question that it is legislative in character; but if it serves simply to put into execution previously enacted laws, it is clearly executive or administrative in nature. *State ex rel. Ballantyne v. Leeman*, 149 Neb. 847, 32 N.W.2d 918 (1948). As appellants concede, "[t]he crucial test for determining that which is legislative [ordinance] from that which is administrative or executive [resolution] is whether the action taken was

one making a law, or executing or administering a law already in existence." *Kelley v. John*, 162 Neb. 319, 321, 75 N.W.2d 713, 715 (1956); *State ex rel. Ballantyne v. Leeman, supra*; *State ex rel. Nelson v. Butler*, 145 Neb. 638, 17 N.W.2d 683 (1945); *Read v. City of Scottsbluff*, 139 Neb. 418, 297 N.W. 669 (1941).

For the following reasons, we conclude that the city's participation in and formation of JAVA through an interlocal cooperation agreement was administrative in nature and not a legislative act. JAVA is a joint administrative entity consistent with the ICA and the political subdivision provision of the city charter. JAVA cannot be a "new" city function or program or an exclusive city department, board, or commission, as defined by the department provision. The agreement combines three governmental entities: a state agency, a municipal corporation, and a political subdivision in an effort to manage existing statutory authority under one organizing body. Each partner maintains some independent responsibility to contribute its fair share of the funds, assets, and administrative services throughout the agreement. Furthermore, JAVA is a temporary entity inconsistent with the ordinance requirement in the department provision. The project's duration purports to last no more than 12 years. At the completion of the project, JAVA will terminate and each individual partner will be responsible for its own property. Therefore, the city correctly authorized its participation in JAVA by resolution and not by an ordinance.

 The distinction between a resolution and an ordinance in referendum actions is useful in arriving at the correct determination of this case. It is the rule in our state that the referendum provisions within our statutes apply to legislative acts, but not to administrative or executive matters. *Kelley v. John, supra*. The right to referendum on a measure passed by a municipal council is ordinarily confined to those acts of the council which are in the exercise of its legislative power and does not extend to administrative or executive acts, even though such acts are exercised by resolution or ordinance. *State ex rel. Ballantyne v. Leeman, supra*. It is fundamental that to permit a referendum to be invoked to annul or delay executive or administrative action would be to destroy the efficiency of the business affairs of a municipality. *State ex rel. Ballantyne v. Leeman, supra*; *Read v. City of Scottsbluff, supra*.

In *State ex rel. Ballantyne v. Leeman*, 149 Neb. 847, 32 N.W.2d 918 (1948), the Omaha City Charter was amended by majority vote to direct the city council to issue municipal bonds for the purpose of acquiring land for the construction of a municipal auditorium. Subsequent to the amendment, the city council by ordinance selected a site for the publicly owned auditorium. The appellants, in a mandamus proceeding, sought to compel the city council to submit the selection site to a referendum vote. We held that it was an act of legislation to direct and authorize the construction of a public building, but that the selection of the site was administrative in nature and thus not subject to referendum actions. *Id.* We stated that to permit such a referendum would delay executive conduct of the council. *Id.*

In the case at bar, the city charter was amended by a vote of the electorate to permit the city council to join with other political subdivisions or public corporations for joint ownership, operation, or performance of any power or function. It is now contended in this appeal that another vote of the electorate is required before the city council can join with other entities in the formation of JAVA. We disagree. Amending the city charter to include the political subdivision provision which permits interlocal cooperation agreements was clearly a legislative act and thus subject to voter approval. However, executing an agreement pursuant to the political subdivision provision is administrative in nature and thus not subject to voter approval. The city council, in joining JAVA, is simply putting into effect the political subdivision provision. To require a separate vote of the electorate each time the city council chooses to undertake a joint effort would clearly delay administrative action already approved of by the electorate in adopting the political subdivision provision. Such delay would destroy the efficiency of the business affairs of a municipality that we disapproved of in *State ex rel. Ballantyne v. Leeman, supra.*

Furthermore, the political subdivision provision provides that "this section shall govern and apply notwithstanding any existing provisions of this charter to the contrary." We determine that the political subdivision provision of the city charter provides the exclusive authority for the city to enter into interlocal agreements and that the department provision is not controlling. The political subdivision provision does not require voter

approval before the city council can act. The city, when adopting the political subdivision provision, could have included a requirement of voter approval if that was its intention. It is not within the province of the courts to read a meaning into a statute that is not there. *Shaul v. Lang*, 263 Neb. 499, 640 N.W.2d 668 (2002); *Creighton St. Joseph Hosp. v. Tax Eq. & Rev. Comm.*, 260 Neb. 905, 620 N.W.2d 90 (2000); *Ramsey v. State*, 259 Neb. 176, 609 N.W.2d 18 (2000). Therefore, we refuse to write in such requirement when the electorate, who had the opportunity to provide for voter approval, did not do so. Therefore, we affirm the district court's decision to grant appellees' motion for summary judgment.

▮▮▮ The assignment of error we now address is that the district court erred in not disclosing the relationship of the judge's spouse as a faculty member of the University of Nebraska. Our review of the record does not disclose any allegation of this sort, nor does it disclose an appellants' motion for the judge to recuse herself. An appellate court will not consider an issue on appeal that is not presented to or passed upon by the trial court. *Maxwell v. Montey*, 262 Neb. 160, 631 N.W.2d 455 (2001); *Claypool v. Hibberd*, 261 Neb. 818, 626 N.W.2d 539 (2001).

Finally, we note that we have considered all other assignments of error not specifically addressed in this opinion and find them to be without merit.

## CONCLUSION

We conclude that the city properly entered into JAVA, an interlocal agreement, as permitted by state statute and the city charter. We also conclude that the formation of JAVA was administrative in nature and not subject to voter approval. For the above-stated reasons, we affirm the district court's decision to grant appellees' motion for summary judgment.

AFFIRMED.

STEPHAN, J., not participating.