JON SMITH ET AL., APPELLANTS, V. CITY OF PAPILLION, NEBRASKA, A CITY OF THE FIRST CLASS LOCATED IN SARPY COUNTY, NEBRASKA, ET AL., APPELLEES.

705 N.W.2d 584

Filed November 10, 2005.   No. S-04-1358.

Michael D. McClellan and William E. Gast, of Gast & McClellan, for appellants.

Michael N. Schirber, of Schirber & Wagner, L.L.P., for appellee City of Papillion.

James M. Bausch, Shawn D. Renner, and Steven M. Delaney, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee Market Pointe, L.L.C.

Irving B. Epstein, of Epstein & Epstein, for appellee Kae S. Pavlik, trustee of the Duane M. Pavlik Family Trust.

CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

After the Papillion City Council took action to amend the City of Papillion's comprehensive development plan and rezone a parcel of land to accommodate a large commercial development, adjacent landowners brought an action to declare such actions void and enjoin any activity consistent with the rezoning. The district court denied the landowners' requests, and they

appealed. For the following reasons, we affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

The City of Papillion hired an urban planner to prepare a comprehensive development plan (CDP) for the city in 1995 and again in 2002. The 2002 CDP was adopted via resolution No. 1275 on September 3, 2002, and highlighted the area of 72d Street and Highway 370 for significant commercial development. In early 2004, the planner was contacted by the city to draft an amendment to the 2002 CDP to accommodate a large commercial project under consideration. Specifically, he was instructed to opine as to whether the area in the southeast quadrant of the intersection of 72d Street and Giles Road was a "defensible site" for commercial development and to prepare a plan amendment addressing that property.

In May 2004, the City of Papillion approved the amendment as resolution No. R04-0054, amending the 2002 CDP to allow for commercial development of approximately 75 acres of property southeast of the intersection of 72d Street and Giles Road. The proposed development included construction of a Wal-Mart Supercenter on the site, along with other businesses, forming a development called Market Pointe. In July 2004, the city passed ordinance No. 1443, changing the zoning of the site from agricultural to mixed use, and approved resolutions Nos. R04-0083 through R04-0086, which dealt with a final plat, mixed-use development agreement, subdivision agreement, and water connection agreement for the site. According to the Papillion city code, the mixed-use classification is meant to accommodate projects that combine several compatible land uses into an integrated development.

The plaintiffs—11 individuals who own real property adjacent to the site (the Homeowners)—filed a complaint against the owner of the site, Kae S. Pavlik, trustee of the Duane M. Pavlik Family Trust; the developers, The R.H. Johnson Company and Papillion Place, L.L.C., also known as Market Pointe, L.L.C.; and the city (collectively the Defendants). The Homeowners sought a judgment declaring the approval of ordinance No. 1443 and the related development plans and agreements to be invalid

and void, in violation of the city code and the Homeowners' due process rights. In addition, the Homeowners sought a judgment declaring resolution No. R04-0054 to be illegal and void, arbitrary and capricious, and a violation of the Homeowners' due process rights. Finally, the Homeowners sought an order temporarily and permanently restraining the Defendants from engaging in any activity authorized by the approval of ordinance No. 1443, the zone change from agricultural to mixed use, and any related development plans.

The Defendants filed motions for summary judgment, which came on for hearing in September 2004. In its order dated September 15, 2004, the district court overruled the Defendants' motions for summary judgment and set trial for the case on September 22. The court also denied the Homeowners' request for a temporary restraining order.

Thereafter, the Homeowners filed a motion for continuance and to correct the record by vacating the court's ruling on their temporary restraining order. In their motion, the Homeowners explained that no motion or application for a temporary restraining order had been made by any of the parties to the action and that, thus, the court's ruling on such a motion should be vacated and stricken from the record. The court overruled both motions. In response to the Homeowners' request to correct the record, the court explained that its decision denying the temporary restraining order was in reference to the Homeowners' request for an order restraining the Defendants from activity authorized by the passage of ordinance No. 1443, as set forth in their complaint. Trial commenced on September 22, 2004.

In its judgment of November 29, 2004, the district court denied the Homeowners' request for injunctive relief and concluded that resolution No. R04-0054 was properly adopted by the city as part of the CDP and was not arbitrary, discriminatory, or unreasonable. In addition, the district court found that resolutions Nos. R04-0083 through R04-0086 and ordinance No. 1443 were valid and not unreasonable, discriminatory, or arbitrary. The court determined that the resolutions and ordinance were a proper exercise of the city's police powers and consistent with the public health, safety, morals, and general welfare of the citizens. The Homeowners timely appealed.

## ASSIGNMENTS OF ERROR

The Homeowners assign, summarized and restated, that the district court erred in (1) finding that resolution No. R04-0054 was effective to amend the city's CDP, (2) finding that ordinance No. 1443 was a valid exercise of the city's zoning power, (3) failing to find that the rezoning was done for an improper purpose and was therefore invalid, and (4) failing to sustain their motion to correct the record by striking the court's ruling on a motion for a temporary restraining order.

## STANDARD OF REVIEW

■ An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. *State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.*, 268 Neb. 439, 684 N.W.2d 14 (2004).

■ An action to declare a zoning ordinance void and to enjoin its enforcement is equitable in nature. *Whitehead Oil Co. v. City of Lincoln*, 245 Neb. 680, 515 N.W.2d 401 (1994); *Giger v. City of Omaha*, 232 Neb. 676, 442 N.W.2d 182 (1989). A case in equity is reviewed de novo on the record, subject to the rule that where credible evidence is in conflict on material issues of fact, we consider and may give weight to the fact the trial court observed the witnesses and accepted one version of the facts over another. *Giger, supra.*

## · ANALYSIS

*Homeowners Have Standing to Pursue Present Action.*

■ Standing is the legal or equitable right, title, or interest in the subject matter of the controversy. *Cornhusker Pub. Power Dist. v. City of Schuyler*, 269 Neb. 972, 699 N.W.2d 352 (2005). The requirement of standing is fundamental to a court's exercise of jurisdiction, and either a litigant or a court before which a case is pending can raise the question of standing at any time during the proceeding. *Stevens v. Downing, Alexander*, 269 Neb. 347, 693 N.W.2d 532 (2005). Prior to argument, the parties were directed to submit supplemental briefs addressing whether the Homeowners have standing to challenge the validity of the rezoning at issue in this case. For the reasons that follow, we conclude that the Homeowners have standing in the present case.

In support of the Homeowners' argument that they have standing to challenge the validity of the rezoning accomplished by the city council in this case, they cite *Eastroads, Inc. v. City of Omaha*, 237 Neb. 837, 467 N.W.2d 888 (1991). In *Eastroads, Inc.*, the plaintiff filed a petition for declaratory judgment against the defendants to declare a rezoning ordinance invalid and enjoin construction on the property in question. The district court found that the plaintiff had no standing to bring the action and granted summary judgment in favor of the defendants. On appeal, the plaintiff argued that the ordinance was arbitrary and unreasonable because of a question of ownership of the property and authority of the applicant to act for the owners in requesting the zone change. In our discussion of the issue, we cited several cases from other jurisdictions addressing irregularities in an application for rezoning property. We then concluded that although adjacent landowners have standing to object to the rezoning of property, they do not have standing to object to an irregularity in the application itself without demonstrating prejudice caused by the irregularity. Thus, we determined that the plaintiff had no standing to attack any irregularity in the application for a zoning change by reason of ownership of the property. *Id.*

In contrast to the Homeowners' argument, the Defendants rely on the reasoning of the Nebraska Court of Appeals in *SID No. 347 v. City of Omaha*, 8 Neb. App. 78, 589 N.W.2d 160 (1999). In *SID No. 347*, the property at issue was rezoned to permit construction of a fast-food restaurant and drive-through in Greenfields Plaza in Omaha. A neighborhood resident filed an action to enjoin implementation of the zoning change. The district court voided the rezoning, and the City of Omaha and the developer appealed. In addressing whether the resident had standing to bring the action, the Court of Appeals stated:

> In situations where a party seeks to restrain an act of a municipal body, as is the case here, the party must show some special injury peculiar to himself aside from a general injury to the public, and it is not sufficient that the party bringing the suit has merely a general interest common to all members of the public.

*Id.* at 85-86, 589 N.W.2d at 166. The resident lived in a residential area developed by Sanitary and Improvement District No.

347 and adjacent to Greenfields Plaza and had expressed concern for his safety and that of his children due to the anticipated increase in traffic which would be caused by the fast-food restaurant. However, the court concluded that the resident had not proved that traffic in the neighborhood was reasonably likely to increase to the point of causing him special damage. Thus, the Court of Appeals concluded that the resident did not have standing to bring a lawsuit to enjoin the enforcement of the rezoning ordinance. *Id.*

■ We conclude that the reasoning in *SID No. 347* represents the better rule. It is generally held that an adjacent landowner has standing to object to the rezoning of property if such landowner shows some special injury separate from a general injury to the public. See, e.g., *Sun-Brite v. Bd. of Zoning*, 69 N.Y.2d 406, 508 N.E.2d 130, 515 N.Y.S.2d 418 (1987); *Lenette Realty v. City of Chesterfield*, 35 S.W.3d 399 (Mo. App. 2000); *Reynolds v. Dittmer*, 312 N.W.2d 75 (Iowa App. 1981). To the extent that *Eastroads, Inc. v. City of Omaha*, 237 Neb. 837, 467 N.W.2d 888 (1991), implies adjacent landowners have standing to object to the rezoning of property without alleging a special injury, it is disapproved.

We further conclude that the Homeowners have sufficiently shown a special injury to establish standing in the present action. All of the Homeowners live in the area adjacent to the site, and it appears that 8 of the 11 Homeowners live within 300 feet of the site. Neb. Rev. Stat. § 19-905 (Reissue 1997) provides a right of protest for persons residing within 300 feet of the area of the proposed zoning change and instructs the legislative body that, instead of posting notice of the proposed rezoning change on the property at issue, it may provide notice of the rezoning by personally serving occupants of the subject property and those residing within 300 feet of the area with written notice before a hearing on the rezoning. The fact that a person would be entitled to receive notice of an administrative hearing because he or she owns property adjacent or very close to the property in issue supports the conclusion that such a person would have standing in a corresponding zoning case. See, *Sun-Brite, supra* (mandatory notice of administrative hearing because party owns property adjacent to property at issue gives

rise to presumption of standing); *Reynolds, supra* (factors to be used as guide in determining sufficiency of person's interest to give standing include proximity of person's property to property to be rezoned and whether person is entitled to receive notice under zoning ordinance).

Furthermore, Robert McClure, an expert in city planning, testified that the value of homes in the area immediately to the west of the site would diminish. McClure testified that uncertainty with respect to the timeline and expected completion of the construction would also cause instability in the prices of homes. Finally, the Market Pointe project is considerably larger than the fast-food restaurant construction opposed in *SID No. 347 v. City of Omaha*, 8 Neb. App. 78, 589 N.W.2d 160 (1999), consisting of approximately 500,000 square feet on 75 acres of land. McClure indicated that the large development planned for the site would compromise the residential character of the adjacent neighborhood. Given the scope of the Market Pointe project and the proximity of the objecting landowners to the proposed development, we conclude that the Homeowners have standing to challenge the rezoning here at issue.

*Resolution No. R04-0054 Effectively Amended City's CDP.*

The Homeowners first assign that the district court erred in finding that resolution No. R04-0054 was effective to amend the city's 2002 CDP. The Homeowners appear to argue that the 2002 CDP was not validly amended in order to provide a basis for their later argument that the rezoning accomplished via ordinance No. 1443 was not "in accordance with" the city's operative CDP, as required under Neb. Rev. Stat. § 19-903 (Reissue 1997). In other words, the Homeowners assert that the 2002 CDP was not validly amended by resolution No. R04-0054; that the 2002 CDP remains the operative CDP, which does not contemplate commercial development at the site; and that, thus, the passage of ordinance No. 1443 was not in accordance with the operative CDP.

Neb. Rev. Stat. § 19-901 (Reissue 1997) provides the legislative body in a city of the first class, such as the City of Papillion, with the power to adopt zoning regulations, but specifies that such powers shall only be exercised after the legislative body has

established a planning commission, received from its planning commission a recommended comprehensive development plan as defined in section 19-903, adopted such comprehensive development plan, and received the specific recommendation of the planning commission on the adoption or amendment of zoning regulations. The planning commission shall make a preliminary report and hold public hearings on its recommendations regarding the adoption or repeal of the comprehensive development plan and zoning regulations and shall hold public hearings thereon before submitting its final report to the legislative body. Amendments to the comprehensive plan or zoning regulations shall be considered at public hearings before submitting recommendations to the legislative body.

Further, § 19-903 states: "The regulations and restrictions authorized by sections 19-901 to 19-915 shall be in accordance with a comprehensive development plan . . . ." Neither § 19-901 nor § 19-903 indicates the manner in which the CDP is to be adopted and amended. In fact, Neb. Rev. Stat. § 19-904 (Reissue 1997) reveals that such details are reserved for the legislative body. Section 19-904 states:

The legislative body of such municipality shall provide for the manner in which such regulations and restrictions, and the boundaries of such districts, shall be determined, established, and enforced, and from time to time amended, supplemented, or changed. The legislative body shall receive the advice of the planning commission before taking definite action on any contemplated amendment, supplement, change, modification, or repeal. No such regulation, restriction, or boundary shall become effective until after separate public hearings are held by both the planning commission and the legislative body in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. Notice of the time and place of such hearing shall be given by publication thereof in a paper of general circulation in such municipality at least one time ten days prior to such hearing.

Furthermore, as stated by a noted commentator:

The general rule is that where a charter commits the decision of a matter to the council or legislative body alone, and is silent as to the mode of its exercise, the decision may be evidenced by resolution. . . .

. . . [W]here there is no general provision in the city's charter providing what must be done by ordinance but the charter does from time to time provide that particular things shall be done by ordinance, the implication is that matters which are not specifically required to be dealt with by ordinance may be dealt with otherwise.

5 Eugene McQuillin, The Law of Municipal Corporations § 15.6 at 108-10 (3d ed. 2004). Section 19-901, requiring municipal legislative bodies to adopt CDP's, does not specify the manner in which such a plan is to be adopted, which leads to the presumption that a CDP may be passed by resolution. Further, other statutory provisions applicable to municipal corporations explicitly require action by ordinance (e.g., Neb. Rev. Stat. §§ 19-913, 19-917, and 19-922 (Reissue 1997)). This certainly implies that the CDP required in § 19-901, but without direction as to the manner in which it should be passed, may be adopted via resolution.

The Homeowners' argument presents a syllogism: According to the Homeowners, legislation is passed by ordinance, and a CDP is legislation; therefore, a CDP is passed and amended by ordinance. However, in order for the conclusion that a CDP must be passed by ordinance to hold up, both premises upon which it is based must be true.

■ The term "ordinance" is generally used to designate a local law of a municipal corporation, duly enacted by the proper authorities, prescribing general, uniform, and permanent rules of conduct, relating to the corporate affairs of the municipality. A resolution is generally not the equivalent of an ordinance, but is rather an act of a temporary character; is ordinarily sufficient for council action on ministerial, administrative, or executive matters; and does not rise to the dignity of an ordinance. *Kubicek v. City of Lincoln*, 265 Neb. 521, 658 N.W.2d 291 (2003); *Sommerfeld v. City of Seward*, 221 Neb. 76, 375 N.W.2d 129 (1985). In *Sommerfeld*, 221 Neb. at 81, 375 N.W.2d at 132, this court stated:

"It has been several times held by this court, and is, we think, the universal doctrine, that where the statute definitely prescribes a method of action, that method must be followed. Where this is not done, if the action taken by the municipality amounts to prescribing a permanent rule of conduct which is thereafter to be observed by the inhabitants of the municipality, or by its officers in the transaction of corporate business, then the rule prescribed may be more properly expressed in the form of an ordinance; but it is entirely proper to act by resolution, if the action taken is merely declaratory of will of the corporation in a given matter, and is in the nature of a ministerial act."

McQuillin is even more specific as to the distinction between matters passed by resolution versus those passed by ordinance:

A resolution ordinarily denotes something less solemn or formal than, or not rising to the dignity of, an ordinance. . . .

. . . Thus, it may be stated broadly that all acts that are done by a municipal corporation in its ministerial capacity and for a temporary purpose may be put in the form of resolutions, and that matters on which the municipal corporation desires to legislate must be put in the form of ordinances. If a municipal act applies generally and prescribes a new plan or policy, it is considered legislative and must be accomplished by an ordinance rather than a resolution. It may further be stated broadly that charters contemplate that all legislation creating liability or affecting in any important or material manner the people of the municipality should be enacted by ordinances, whether the city is acting in its governmental or private capacity.

5 Eugene McQuillin, The Law of Municipal Corporations § 15.2 at 82-90 (3d ed. 2004).

However, whether a CDP is considered legislation—and thus must be passed via ordinance—is less clear. The Homeowners argue that a CDP is legislative in nature because it provides long-term policies that guide the city into the future. If an ordinance enacts a law or lays down a course of policy to guide the citizens, there can be no question that it is legislative in character, but if it serves simply to put into execution previously enacted laws, it is clearly executive or administrative in

nature. *Kubicek, supra.* The crucial test for determining that which is legislative (ordinance) from that which is administrative or executive (resolution) is whether the action taken was one making a law, or one executing or administering a law already in existence. *Id.*

Although a CDP does indeed provide a long-term strategy for city development, such a characteristic does not make it legislation that must be passed by ordinance. This court has stated that a CDP is a guideline and is not binding but is merely a policy statement that may be implemented through zoning and that it is the actual zoning which has the force of law. *Omaha Fish & Wildlife v. Community Refuse*, 213 Neb. 234, 329 N.W.2d 335 (1983); *Simpson v. City of North Platte*, 206 Neb. 240, 292 N.W.2d 297 (1980); *Holmgren v. City of Lincoln*, 199 Neb. 178, 256 N.W.2d 686 (1977); *Stones v. Plattsmouth Airport Authority*, 193 Neb. 552, 228 N.W.2d 129 (1975). See, also, *Copple v. City of Lincoln*, 202 Neb. 152, 158, 274 N.W.2d 520, 524 (1979) ("[t]he comprehensive plan, as adopted by the City of Lincoln, itself recognizes it is only to serve as a general guide in the development of Lincoln and Lancaster County. While the comprehensive plan specifically refers to the location of [one defendant's] property as a site for a regional multiuse shopping center, it does not necessarily follow that [the defendant's] property will, in fact, be developed as the regional shopping center").

The Homeowners cite *Kelley v. John*, 162 Neb. 319, 322, 75 N.W.2d 713, 715 (1956), in which this court stated, "[i]t seems clear to us that an ordinance adopting a comprehensive plan for zoning a city is a legislative matter." However, in *Kelley*, the comprehensive plan referred to by the court was a comprehensive *zoning* plan, as opposed to a comprehensive development plan. The plan declared to be legislative in *Kelley* was a zoning plan that actually zoned the property at issue, rather than a comprehensive development plan that merely provided guidelines for community development.

We also note that according to the record, the city's 2002 CDP was adopted via resolution. In the Homeowners' reply brief, they state that "[t]he validity of the 2002 [CDP] has never been at issue in this litigation." Reply brief for appellants at 5. Such a

statement contradicts the Homeowners' argument that the 2002 CDP could not be amended by resolution. In other words, the Homeowners contest the validity of the resolution amending the 2002 CDP and, simultaneously, rely on the validity of the 2002 CDP, also passed by resolution. Logically, the Homeowners cannot claim that an amendment to the 2002 CDP, passed in the same manner in which the original 2002 CDP was adopted, is insufficient to accomplish a change to the plan. See *Sommerfeld v. City of Seward*, 221 Neb. 76, 82, 375 N.W.2d 129, 133 (1985) (" '[i]t takes a law to repeal a law, and . . . an act which destroys should be of equal dignity with that which established the procedure . . . and . . . an ordinance may be repealed only by another ordinance and not by resolution . . .' ").

For the foregoing reasons, we conclude that resolution No. R04-0054 was administrative rather than legislative in nature, and effectively amended the 2002 CDP. The Homeowners' first assignment of error is without merit.

*Ordinance No. 1443 Was Valid Exercise of City's Zoning Power.*

The Homeowners assign that the district court erred in finding that ordinance No. 1443 was a valid exercise of the city's zoning power and that the zoning change was not arbitrary, capricious, or unreasonable. The Homeowners assert that the city failed to comply with the city code in adopting ordinance No. 1443 because the ordinance failed to include language of permitted uses or zoning regulations for the site; such information was only found in agreements with the developers, The R.H. Johnson Company and Papillion Place, which agreements were approved by resolution. As a result, the Homeowners argue, a true public hearing was never held on ordinance No. 1443 because the documents containing the zoning regulations and permitted uses for the rezoned site were not incorporated into the ordinance and were unavailable to the public at the time of the hearing.

Neb. Rev. Stat. § 16-404 (Cum. Supp. 2004) requires a majority vote from elected city council members for the passage of ordinances and resolutions. Further, § 16-404 requires ordinances to be read by title on three different days, unless three-fourths of the council members vote to suspend the requirement. Papillion

Mun. Code, ch. 205, art. XII, § 205-96D (2003), details the procedure for rezoning as follows:

(1) The Planning Commission, following 10 days' notice and publication, shall hold a public hearing on each proposed text or rezoning and, following such public hearing, shall recommend action to the City Council.

(2) The City Council, after publication and public hearing, shall act on the proposed amendment. A majority vote of those members either elected or appointed to the City Council is required for approval.

The planning commission, appointed by the mayor with the consent of three-fourths of the city council members, is composed of nine residents of the city, representing different professions, interests, and occupations.

In this case, the planning commission considered ordinance No. 1443 in a public hearing on March 24, 2004, which was continued to April 21. Notice of each meeting was conducted via publication pursuant to the city code. At the conclusion of the April 21 meeting, all nine planning commission members voted in favor of recommending approval of the zoning change.

A first reading of ordinance No. 1443 took place before the city council on May 4, 2004, followed by a second reading and public hearing on May 18. During the public hearing, those in attendance were invited to speak in favor of or in opposition to the zoning change proposed by ordinance No. 1443. Some of those opposing the zoning change and the Market Pointe project expressed concerns regarding the lack of information about uses that would be permitted by the mixed-use zoning designation. It was explained by various individuals, including the mayor, the city attorney, members of the city council, and the former city planning director, that a mixed-use development agreement would be presented along with the request for approval of the final plat and would detail the specific design guidelines and permitted uses for the Market Pointe project. The zoning change would be voted on and adopted, contingent upon the approval of the mixed-use development agreement, final plat, and related agreements. The mayor and city council members further explained that proponents and opponents would be invited to speak at the presentation of each of those related agreements.

The city clerk testified that prior to each city council meeting, a packet of information is compiled for the city council members to use in reviewing items on the upcoming agenda and in making decisions on how to vote on such matters (the city council report). A copy of the city council report remains in the clerk's office where it is available to the public. The city clerk further testified that the city council report is typically completed and available to the public before 5 p.m. on the Friday before each scheduled city council meeting.

The record shows that the mixed-use development agreement between the City of Papillion and Market Pointe, L.L.C., which agreement sets forth the permitted uses and design guidelines for the Market Pointe project, was not part of the city council report prepared prior to the May 18, 2004, city council meeting. However, the city council report included a summary of information about the Market Pointe project prepared by the developers, The R.H. Johnson Company and Papillion Place, along with responses to questions and concerns regarding the development. The mixed-use agreement itself was available as part of the city council report prepared prior to the July 20 city council meeting—the third and final reading of ordinance No. 1443. At the July 20 meeting, ordinance No. 1443 was passed, contingent upon the approval of resolutions Nos. R04-0083, Market Pointe final plat; R04-0084, mixed-use agreement; R04-0085, subdivision agreement between the city, Market Pointe, L.L.C., and Sanitary and Improvement District No. 259 (SID No. 259); and R04-0086, sewer and water connection agreement between SID No. 259, Market Pointe, L.L.C., and the city.

After ordinance No. 1443 was approved by a unanimous vote, the city council addressed each resolution, calling for comments by proponents and opponents before voting on the resolution. Addressing the city council, some of the individuals opposing the Market Pointe project expressed concern about the list of businesses permitted in the development and referenced the list provided in the mixed-use agreement, indicating that they indeed had access to such information prior to the July 20, 2004, meeting. In addition, many of the individuals referred to the hours of evidence and testimony that had been placed before the city

council in opposition to the Market Pointe project, acknowledging their opportunity to address the planning commission and city council with their concerns.

The Homeowners note that Papillion Mun. Code, ch. 205, art. V, § 205-30 (2003), states that an ordinance establishing a mixed-use district establishes the uses permitted within its boundaries. Section 205-30 also states that an application for approval of such a district must contain, among other things, a development plan that includes a site layout and a description of all use types included in the area, and specific proposed development regulations for the project, including the specific use types permitted within the proposed district.

The text of ordinance No. 1443 did not include the permitted uses of the proposed rezoning of the site from agricultural to mixed use. However, the passage of ordinance No. 1443 was made contingent upon the approval of four related agreements, resolutions Nos. R04-0083 through R04-0086, all of which provided further information about the Market Pointe project and were presented to the city council for approval after opportunities for public comment. In other words, while the ordinance standing alone did not contain the detailed use restrictions required by the city code, the ordinance did not stand alone; rather, it was part of a package of related resolutions which did contain the necessary information. Considering the size of the proposed Market Pointe project, it is reasonable to permit the city council to pass multiple agreements in pursuit of a complete and desirable package of legislation. See *Giger v. City of Omaha*, 232 Neb. 676, 442 N.W.2d 182 (1989).

In *Hansen v. City of Norfolk*, 201 Neb. 352, 267 N.W.2d 537 (1978), the plaintiffs sought to have a zoning ordinance of the city of Norfolk declared void and to enjoin enforcement of the ordinance. The plaintiffs claimed that an inadvertent error in the legal description of the area affected by the ordinance made the ordinance void. However, the plat and map that accompanied the planning commission proceedings clearly showed the correct boundaries, and the evidence showed that neither the plaintiffs nor anyone else was misled or confused by the description. After the district court found that the plaintiffs failed to prove facts sufficient to establish the invalidity of the ordinance and

dismissed the action, the plaintiffs appealed. This court looked to other courts for guidance in affirming the judgment of the district court, stating: "Where there have been minor errors in zoning maps or legal descriptions but the ordinances were reasonably capable of comprehension, other courts have found no difficulty in validating the ordinances or zoning amendments involved." *Hansen*, 201 Neb. at 358, 267 N.W.2d at 540.

*Hansen* is instructive in this case because, even though the text of ordinance No. 1443 did not specify the details of the mixed-use development, it was accompanied by documents that did provide those details. Thus, the scope of the rezoning proposed in ordinance No. 1443 was reasonably capable of comprehension, even though the ordinance alone did not establish the permitted uses of the mixed-use area.

The Homeowners in this case argue that they were not given a meaningful opportunity to protest the components of the Market Pointe project. However, a review of the record reveals that they had chances to voice their concerns in various settings, including at townhall meetings where audience members included city council members, at planning commission meetings, at city council meetings, and in one-on-one conversations with city council members. The city council may not have come to the decision urged by the Homeowners, but the Homeowners were indeed given adequate opportunities to make their elected officials aware of their concerns. Their second assignment of error is without merit.

*Rezoning Was Consistent With City's Duty to Promote Health, Safety, and Welfare of Citizens.*

The Homeowners argue that the rezoning of the site was done for the sole benefit of the developers, The R.H. Johnson Company and Papillion Place, constituting "spot zoning." In addition, the Homeowners argue that the rezoning was approved only in order to take advantage of resulting tax benefits. Therefore, the Homeowners argue that the rezoning was arbitrary and capricious and should be declared void.

Section 19-901(1) states:

> For the purpose of promoting health, safety, morals, or the general welfare of the community, the legislative bodies in

cities of the first and second class and in villages may adopt zoning regulations which regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industry, residence, or other purposes.

In addition, § 19-903 requires that zoning regulations be designed to lessen street congestion; secure safety from flood, fire, panic, and other dangers; provide adequate light and air; prevent overcrowding; facilitate transportation, water, sewerage, schools, parks, and other public requirements; protect property against depreciation; protect the tax base; secure economy in governmental expenditures; and preserve and protect historic areas. Further, Papillion Mun. Code, ch. 205, art. I, § 205-3 (2003), provides that the purposes of zoning are to serve the public health, safety, and welfare; classify property to reflect its suitability for specific uses; provide for sound, attractive development; encourage compatibility of adjacent land uses; protect environmentally sensitive areas; and advance the objectives of the CDP.

Courts will generally presume that legislative or rulemaking bodies, in enacting ordinances or rules, acted within their authority and that the burden rests on those who challenge their validity. *K N Energy v. Cities of Alliance & Oshkosh*, 266 Neb. 882, 670 N.W.2d 319 (2003). The validity of a zoning ordinance must be determined by an examination of the facts presented in the particular case. *Bucholz v. City of Omaha*, 174 Neb. 862, 120 N.W.2d 270 (1963). This court gives great deference to a city's determination of which laws should be enacted for the welfare of the people. When the city rezones a parcel of property, we presume the validity of that action absent clear and satisfactory evidence to the contrary. *Giger v. City of Omaha*, 232 Neb. 676, 442 N.W.2d 182 (1989). When the city considers a request for rezoning based upon a plan or representation by the developer, it is presumed that the city grants the request after making the determination that the plan as represented is in the interest of public health, safety, morals, and the general welfare. *Id.*

The Homeowners contend this case presents an example of spot zoning. Spot zoning generally refers to the singling

out of a small parcel of land for a use or uses classified differently from the surrounding area, primarily for the benefit of the owner of the property so zoned and to the detriment of the area and other owners therein. The validity of spot zoning depends on more than the size of the spot, and spot zoning as such is not necessarily invalid, but its validity depends upon the facts and circumstances appearing in each particular case. *Bucholz, supra.* In *Bucholz*, this court addressed whether a zoning change was arbitrary and capricious and therefore unconstitutional spot zoning, listing three elements typically present in invalid spot zoning: A small parcel of land is singled out for special and privileged treatment, the singling out is not in the public interest but serves only the interests of the landowner, and the action is not in accord with a comprehensive plan.

In this case, the Homeowners failed to present evidence sufficient to rebut the presumption of validity given to the city's actions in approving ordinance No. 1443 and the related resolutions and thus showing that such action by the city was arbitrary and capricious. It is difficult to characterize a 75-acre development as a "small parcel of land"; indeed, the size and scope of the development form the basis of the Homeowners' opposition. As will be discussed in more detail below, the city determined that the economic development promised by the Market Pointe project was in the public interest. And, as noted above, the city duly amended its CDP after considering its effects. Although the Homeowners presented the expert testimony of McClure in support of their contention that their property values would decrease as a result of the Market Pointe project, such evidence does not establish that the rezoning is either illegal or arbitrary and capricious. The Homeowners appear to rely primarily on the potential consequences of the new development on their property values as justification for invalidating the rezoning ordinance. However, the exercise of the power to zone may not be denied on the ground that individual property rights may be adversely affected thereby. *Bucholz v. City of Omaha*, 174 Neb. 862, 120 N.W.2d 270 (1963). In short, the Homeowners did not prove that this case involves illegal spot zoning.

The Homeowners further argue that the city's attention to the economic benefits of the Market Pointe project was an improper

basis for rezoning. The mayor testified about the shortage of retail development in Papillion and the complaints by residents having to travel long distances to shop. The mayor testified about the city's interest in preventing this leakage—that is, preventing Papillion residents from going outside the community to shop. Specifically, the mayor testified that around 50 percent of the dollars spent by Papillion residents are spent outside Papillion, substantially higher than the 8- to 11-percent leakage in La Vista and Bellevue. The mayor indicated that retail development in Papillion would be convenient for Papillion residents and that the city would benefit from the revenue from commercial development.

Although the city made clear its interest in the economic benefits of the rezoning, the record shows that the city did not rezone the site without evaluating the potential consequences to surrounding areas. The evidence presented shows that the city studied the effects of the proposed development on traffic and arranged for numerous adjustments to the design of the development in order to address specific concerns of adjacent landowners (i.e., no outdoor intercom, larger number of trees, limited fast-food restaurants). The planning commission and city council heard hours of testimony from adjacent landowners regarding concerns about the Market Pointe project, but ultimately, the planning commission unanimously recommended approval of the Market Pointe project zoning change, and the city council adopted the zoning change by a unanimous vote.

In sum, based on the record in this case, the Homeowners failed to overcome the presumption that the city acted within its zoning power and did so in pursuit of the health, safety, and welfare of Papillion residents.

*Issue Regarding Motion to Correct Record Is Moot.*

The Homeowners assign that the district court erred in overruling their motion to correct the record by striking the court's ruling on a motion for a temporary restraining order. The Homeowners assert that such a motion was never made and that therefore, they had no opportunity to present evidence to the court on such a motion. Further, they argue that by ruling on a matter not before the court and prior to the presentation on the

merits, the court created an appearance that it had predetermined the merits of the action. Accordingly, the Homeowners argue that the portion of the court's September 15, 2004, order ruling on a temporary restraining order is void.

■ The district court correctly overruled the Homeowners' motion to correct the record because, contrary to their argument, they indeed requested a temporary restraining order in their complaint. In any event, any issue with respect to a temporary restraining order is moot; the denial of a temporary restraining order is not a final, appealable order, and that issue merges into the final decree. See, *Waite v. City of Omaha*, 263 Neb. 589, 641 N.W.2d 351 (2002); *State ex rel. Douglas v. Ledwith*, 204 Neb. 6, 281 N.W.2d 729 (1979). The Homeowners' final assignment of error is without merit.

## CONCLUSION
Based on the record presented in this appeal, we conclude that the Homeowners failed to present sufficient evidence to overcome the presumption that the actions of the city council were valid. Thus, we affirm the judgment of the district court.

AFFIRMED.

HENDRY, C.J., and WRIGHT, J., not participating.