This is an appeal from the trial court's order, by way of summary judgment, denying a petition for issuance of writs of quo warranto and mandamus.
In January 1987, after his election to a first term as Governor of Alabama, Guy Hunt submitted to the senate the appointment *Page 968 
of Zack Thompson as state banking superintendent. The appointment was made pursuant to § 5-2A-3, Code 1975. That Code section provides, in part, as follows:
 "The state banking department shall be in the charge of the superintendent, who shall be the chief executive officer of the department. . . . The superintendent shall be appointed by the governor by and with the consent of the senate. The term of office of the superintendent shall expire on the first day of February after the expiration of the term of office of the governor making the appointment, but he may continue to serve until his successor is appointed and has qualified."
The senate promptly confirmed Governor Hunt's appointment of Thompson. Commission was issued, and Thompson commenced his duties as banking superintendent in the early part of 1987, serving in that post throughout Governor Hunt's first four-year term.
In January 1991, after his reelection to a second term of office, Governor Hunt reappointed Thompson as banking superintendent. In compliance with § 5-2A-3, Governor Hunt once again submitted the appointment of Thompson to the senate. Thompson's name was forwarded to the five-member senate committee on confirmations (senate committee) for its consideration.
On July 29, 1991, the senate committee rejected Thompson's reappointment, voting four to zero, with one absence. The result of the senate committee's vote was forwarded to the secretary of the senate, who in turn notified the legislative liaison in the governor's office. After the senate committee's vote, the full senate took no action with regard to Thompson's reappointment. Thompson, however, continued to serve as banking superintendent. In the ensuing months, Governor Hunt refused to submit the name of another appointee to that office. Governor Hunt took the position that, for purposes of § 5-2A-3, an appointment could not be rejected by the five-member senate committee, but could properly be rejected only by the full senate, and that, therefore, the reappointment of Thompson was still pending consideration by the full senate.
In May 1992 the State of Alabama ex rel. Rufus Hartman (appellant) filed a petition in the Montgomery County Circuit Court, seeking (1) a writ of quo warranto challenging the legal authority of Thompson to continue holding the office of banking superintendent, and (2) a writ of mandamus commanding Governor Hunt to immediately appoint a new banking superintendent and to submit the appointee's name to the senate for consideration pursuant to § 5-2A-3. In addition, the appellant filed a motion for summary judgment based upon the pleadings and submitted a memorandum in support of the motion. Thereafter, Thompson and Hunt (appellees) filed a cross-motion for summary judgment, accompanied by a supporting brief.
In August 1992, following a hearing on the parties' motions, the trial court concluded that: (1) the senate committee's vote not to recommend to the full senate that Thompson be reappointed as banking superintendent constituted senate rejection of the appointment; (2) although his reappointment had been rejected by the senate, Thompson continued to legally serve as banking superintendent pursuant to the provision in § 5-2A-3; (3) because Thompson was legally in office by virtue of his original term, the remedy of quo warranto could not lie; and (4) no grounds existed for the issuance of a writ of mandamus commanding Governor Hunt to appoint another banking superintendent, "since . . . no vacancy exists [in that office]." The trial court entered summary judgment against the appellant, and this appeal ensued.
 I.
Was Thompson authorized, by virtue of his first term of office and pursuant to the holdover provision in § 5-2A-3, to continue exercising the duties of the office of banking superintendent?
In view of the exceptional facts presented in this case, we must concur with the trial court's determination that the holdover provision in § 5-2A-3 authorized Thompson to continue performing the duties of superintendent, even at the time the case was heard.
 "The purpose of provisions authorizing officers to hold over is to prevent a hiatus in *Page 969 
the government pending the time when a successor may be chosen and inducted into office, for, in the absence of any provisions to the contrary, public interest requires that public offices should be filled at all times, without interruption."
63A Am.Jur.2d Public Officers and Employees § 166 (1984). Whether the parties involved here have, in fact, acted at all times in the public interest, § 5-2A-3 provides that the banking superintendent may hold over when no successor is appointed and qualified to fill the office. We do take note of the appellant's contention that the courts of this state have consistently disfavored the prolonged extension of the terms of public officers through holdover provisions. Siegelman v.Folmar, 432 So.2d 1246 (Ala. 1983); State ex rel. Benefield v.Cottle, 254 Ala. 520, 49 So.2d 224 (1950); Ham v. State ex rel.Blackmon, 162 Ala. 117, 49 So. 1032 (1909); Prowell v. State exrel. Hasty, 142 Ala. 80, 39 So. 164 (1904). However (as was pointed out by the trial court with respect to Benefield,supra), in those cases where our courts have construed holdover provisions as not prolonging an incumbent's term, a successor was ready and qualified to fill the office. Such is not the case here. Therefore, the writ of quo warranto was properly denied.
This, however, does not stop our inquiry in this matter. We recognize the problems that may be created when the appointing official fails to perform the act of appointment necessary for the smooth operation of the controlling statute.
 II.
Was there a legal vacancy in the office of superintendent following the expiration of Thompson's term on February 1, 1991?
The trial court found that it was unnecessary to consider the propriety of mandamus commanding Governor Hunt to appoint a new superintendent because, inasmuch as Thompson held over from his original term, no "vacancy" existed in the superintendent's office. We must conclude, however, that Thompson held over not as a de jure officer but did so in merely a de facto capacity. Accordingly, a legal vacancy existed in the office of banking superintendent, and Thompson's de facto incumbency could not prevent the filling of the office by the authority authorized to fill vacancies.
We recognize that the rule in a number of other jurisdictions has traditionally been that where an official's term of office is, by statute, for a definite period of time "and until a successor is appointed and qualified," an incumbent holding over is a de jure officer, and there is no "vacancy" in the office within a constitutional or statutory provision authorizing appointments to fill vacancies. See, e.g., State exrel. McCarthy v. Watson, 132 Conn. 518, 45 A.2d 716 (1946);State ex rel. Bachman v. Wright, 56 Ohio St. 540, 553,47 N.E. 569, 572 (1897); State ex rel. Lyon v. Bowden, 92 S.C. 393,75 S.E. 866 (1912). However, the language of a statute, and particular circumstances, may indicate against the general rule and, as such, justify a determination that a holdover serves as a de facto officer only and that the office is vacant. Alcornex rel. Hendrick v. Keating, 120 Conn. 427, 181 A. 340 (1935). We conclude that the language of § 5-2A-3, and the circumstances of this case justify a determination that service by an incumbent banking superintendent under the holdover provision in § 5-2A-3 constitutes service as a de facto officer and that the office is legally "vacant" at the expiration of the fixed term of office provided in the statute.
The role of the courts in the area of statutory construction is to ascertain and effectuate the intent of the legislature as expressed in the statute. This intent may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained. Tin Man Roofing Co. v.Birmingham Board of Education, 536 So.2d 1383 (Ala. 1988).
In § 5-2A-3, the legislature makes a clear distinction between the superintendent's "term of office," i.e., that period primarily designated as constituting the superintendent's fixed term, and the time the superintendent "may continue to serve" after the expiration of that term. The time allowed under the holdover provision is not joined to the fixed term of office by the *Page 970 
conjunctive "and," typically found in statutes with holdover provisions that have been held to be part of statutory terms of office. Moreover, had the legislature intended for service as a holdover to be a mandatory part of the statutory term of office, it would not have used the permissive term "may," but would have used the imperative term "shall," as it did elsewhere in § 5-2A-3.
We believe that an alternative construction of the statute would create the possibility of intolerable results, results already suggested by the facts of the present case. If the statute were construed to provide that no vacancy could exist in the office of superintendent for so long as an incumbent physically occupied the office under the holdover provision, a holdover superintendent might theoretically be allowed to serve ad infinitum after the expiration of his or her term, so long as the governor refuses to appoint a new superintendent.
Likewise, under such a construction, an incumbent superintendent in office by appointment of the prior governor might also serve through the term of the succeeding governor who did not appoint him or her if, for political reasons, the senate repeatedly rejected (or refused to consider) the governor's appointment. There being no "vacancy" to be filled by appointment, the governor would effectively be robbed of the power to choose those persons he wants to fill important public offices. This surely could not be the intent of the statute. In deciding between alternative meanings to be given to uncertain or ambiguous statutory provisions, we will not only consider the results that flow from assigning one meaning over another, but will also presume that the legislature intended a rational result, one that advances the legislative purpose in adopting the legislation. John Deere Co. v. Gamble, 523 So.2d 95 (Ala. 1988).
 III.
Does the governor have a duty under § 5-2A-3 to appoint a banking superintendent when there is a legal vacancy in the office?
In interpreting and implementing a statute, we must look to the context, spirit, and the whole in order to reach the true intent of the legislature. Hawley Fuel Corp. v. Burgess Mining Construction Corp., 291 Ala. 546, 283 So.2d 603 (1973).
We find that § 5-2A-3 clearly imposes a non-discretionary duty upon the governor to appoint a banking superintendent, where it provides that "[t]he superintendent shall be appointed by the governor." In the absence of clear legislative intent to the contrary, the word "shall" is to be afforded a mandatory connotation when it appears in a statute. Prince v. Hunter,388 So.2d 546 (Ala. 1980). Here, no such contrary legislative intent is present. The very object of the statute would be thwarted if the governor's appointment powers under § 5-2A-3
were held to be permissive. Furthermore, any interpretation of § 5-2A-3 that would preclude the duty of the governor to exercise his appointment powers to fill a vacancy would deprive the senate of its authority to confirm or reject appointees, effectively reading out of the statute the language that provides that the banking superintendent "shall be appointed . . . by and with the consent of the senate."
 IV.
Did the vote by the senate committee not to recommend Thompson's reappointment constitute senate rejection of the appointment?
The trial court found that Thompson's reappointment had been rejected by the senate, stating as follows in its order:
 "The Court is of the opinion and finds as a matter of law that the rules and procedures of the Alabama Senate do not provide for a vote by the Senate if an appointment is not reported favorably out of Committee. When the Senate Committee votes not to recommend an appointment to the full Senate, such action constitutes Senate rejection or non-consent. This determination is in accord with the position of the Secretary of the Alabama Senate, McDowell Lee, and is his interpretation of the Senate Rules. . . . The Court agrees with counsel for Governor Hunt that . . . 'McDowell Lee is the expert . . . he is the *Page 971 
foremost expert today in the State of Alabama on rules.' "
The record shows that McDowell Lee, by way of deposition, testified that for approximately the last thirty years, it has been the practice of the senate to refer appointments by the governor to the senate committee on confirmations; that, during that time, whenever an appointment was not reported favorably out of the committee, the appointment was considered to be dead and to have been rejected by the senate; and that once a committee reported unfavorably on an appointment, further action by the full senate was unnecessary.
The senate has the authority to adopt rules to govern its own proceedings, except as controlled by the provision of our constitution. Ala. Const. art. IV, § 53; Opinion of theJustices No. 185, 278 Ala. 522, 179 So.2d 155 (1965). Such authority extends to the determination of the propriety and effect of any action taken by the senate as it proceeds in the exercise of any power, in the transaction of any business, or in the performance of any duty conferred upon it by the constitution. Opinion of the Justices No. 95, 252 Ala. 205,40 So.2d 623 (1949).
The record reflects that Rule 33 of the 1991 senate rules provided for rejection of appointments by the entire senate and that since 1903, in fact, the published rules of only one senate session have provided for the rejection of appointments by a senate committee. The senate, however, for at least the last thirty years, has followed the practice of considering its confirmation committee's vote "not to recommend" an appointment to be binding. During this time, the practice has been followed apparently without objection, and the senate by its actions may be considered to have adopted it as a rule. Furthermore, the appellees presented no evidence that the vote by the committee not to recommend Thompson was considered by the senate to be anything other than a vote to reject Thompson's reappointment. Although § 5-2A-3 provides that an appointment to the office of superintendent is to be considered by "the senate," the senate is free to determine that consideration by the senate committee constitutes consideration by "the senate" for purposes of the statute. Therefore, we find that the trial court was correct in holding that the senate had rejected Thompson's reappointment.
 V.
Did Governor Hunt have a mandatory duty, subject to control by mandamus, to appoint another banking superintendent and to submit the appointee's name for consideration by the senate?
It is the law in Alabama that a writ of mandamus will issue to require a public official to do a ministerial act that the official is legally bound to perform. Taylor v. Troy StateUniversity, 437 So.2d 472 (Ala. 1983). The governor is no more immune to mandamus than any other public official who refuses to perform a ministerial duty imposed upon him. State ex rel.Turner v. Henderson, 199 Ala. 244, 74 So. 344 (1917). Thus, in the case before us, we hold that the governor's statutorily mandated duty to appoint a banking superintendent with the consent of the senate may be enforced to require the exercise of a choice by the governor. We do not find that such action by the governor may be compelled at the instant of the expiration of the banking superintendent's term or at the instant an appointee to the office is rejected by the senate. In its order, the trial court noted that § 5-2A-3 does not impose upon the governor a specific time limit for the appointment of a banking superintendent. We find that in order to facilitate the administration of public affairs and to effectuate the legislative intent expressed in the statute, those parties charged with ministerial duties under § 5-2A-3 should perform those duties within a reasonable period of time. See State exrel. Brotherton v. Moore, 159 W. Va. 934, 230 S.E.2d 638 (1976). In the circumstances of this case, where Thompson's term as banking superintendent expired on February 1, 1991, and his appointment to a second term was rejected by the senate in July 1991, the failure of Governor Hunt to appoint a new banking superintendent, and to submit the appointee's name to the senate for consideration, is properly subject to control by mandamus. *Page 972 
It is to be expected that the senate, by acting for the public good and fulfilling its own statutory obligations, will act expeditiously upon an appointment when it is in session. Section 5-2A-3 also provides:
 "If for any reason there should be a vacancy in the office while the senate is not in session, the governor shall appoint a superintendent and such superintendent shall hold office and exercise the powers conferred by law upon him until the senate
meets and passes on the appointment, and if his appointment is disapproved by the senate another appointment shall be made by the governor in like manner until an appointment is confirmed by the senate." (Emphasis added.)
Until the senate acts on an appointment, the appointee shall hold office under § 5-2A-3. If the senate rejects that appointee, the governor shall appoint another banking superintendent, who "shall hold office and exercise the powers conferred by law upon him until the senate meets and passes on [that] appointment." § 5-2A-3. Once an appointee has been rejected by the senate, it is the duty of the governor to name a new appointee. The new appointee takes office immediately upon being named by the governor, and the holdover, or de facto, banking superintendent must vacate the office upon the new appointment. The new appointee shall hold the office in a like manner.
For the reasons stated in this opinion, we hold that the trial court was in error when it entered summary judgment denying the appellant's petition for a writ of mandamus. The judgment of the trial court is therefore reversed, and the cause is remanded for further proceedings consistent with this opinion, if such proceedings become necessary.
REVERSED AND REMANDED WITH DIRECTIONS.
THIGPEN and YATES, JJ., concur.