277 Neb. 919
STATE OF NEBRASKA EX REL. CHARLES O. PARKS, JR., AND EDWARD ROLLERSON, APPELLANTS,
v.
THE COUNCIL OF THE CITY OF OMAHA, NEBRASKA, ALSO KNOWN AS CITY COUNCIL OF OMAHA, NEBRASKA, ET AL., APPELLEES.
No. S-08-660.
Supreme Court of Nebraska.
Filed June 12, 2009.
Robert V. Broom, of Broom, Johnson, Clarkson & Lanphier, and Amy A. Miller, of ACLU Nebraska Foundation, for appellants.
Alan Thelen, Omaha Deputy City Attorney, and Michelle peters for appellees.
Craig E. Groat, amicus curiae.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.
GERRARD, J.
Charles O. Parks, Jr., and Edward Rollerson (Relators) brought this action for a writ of mandamus against the Omaha City Council, seeking an order requiring the city council to employ and appropriate funds for a public safety auditor (Auditor). We conclude that the Relators have no clear legal right to the relief they seek. Accordingly, the district court did not err in denying the writ of mandamus. We affirm.

BACKGROUND
The Relators are citizens, taxpayers, registered voters, and residents of Omaha, Nebraska. They also belong to the "Coalition Against Injustice," which is an unincorporated association of Omaha citizens who are concerned with identifying and correcting injustices, including those related to police misconduct and oversight. The city council is the elected legislative body of the city of Omaha. It has the power to pass ordinances and adopt the budget for expenditures.
In July 2000, the city council adopted ordinance No. 35280, codified at Omaha Mun. code, ch. 25, art. I, § 25-9 (2005), which establishes the office of Auditor. The function of the Auditor is to review all citizens' complaints against any city of Omaha police officer or firefighter. Section 25-9F(2) provides that the Auditor "shall be appropriated funds in the normal city budgeting process similar to other city departments, and shall be included within the police department and fire department budget." The city council had not appropriated funds in the 2008 budget for an Auditor, and no Auditor has been employed by the city of Omaha since November 2006.
The Relators filed a petition for a writ of mandamus seeking to compel the city council to comply with § 25-9 by immediately appropriating funds for the office of the Auditor and employing an Auditor for as long as required by law. The district court issued an alternative writ of mandamus ordering the city council to carry out its obligations under § 25-9 or to show cause why a writ of mandamus should not issue. A hearing to show cause was held. After the hearing, the court denied the petition for writ of mandamus, concluding that the Relators lacked standing and that in any event, § 25-9 does not impose a ministerial duty on the city council to employ and appropriate funding for an Auditor. The Relators appeal.

ASSIGNMENTS OF ERROR
The Relators assign, restated, that the district court erred in (1) determining that the Relators did not have standing to bring a mandamus action, (2) determining that § 25-9 did not impose a legal duty on the city council to employ and appropriate funding for an Auditor, and (3) receiving certain evidence offered by the city council to aid in the interpretation of § 25-9.

STANDARD OF REVIEW
The meaning of a statute is a question of law.[1] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[2]
The Relators' first argument is that the district court erred in concluding that they lacked standing. For purposes of this appeal, we assume, without deciding, that the Relators have alleged facts sufficient to permit them to bring the action. Instead, we turn to whether the Relators alleged facts sufficient to establish that they have a clear legal right to a writ of mandamus.
[1,2] In their second assignment of error, the Relators argue that the district court erred when it concluded that the city council did not have a ministerial duty to employ and fund an Auditor. Mandamus is a law action and is defined as an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act, and (3) there is no other plain and adequate remedy available in the ordinary course of law.[3] In a mandamus action, the party seeking mandamus has the burden of proof and must show clearly and conclusively that such party is entitled to the particular thing the relator asks and that the respondent is legally obligated to act.[4]
At issue in this case is whether, under § 25-9, the city council is legally obligated to employ and appropriate funding for an Auditor. The Relators argue that it is. The language of § 25-9, the Relators contend, creates a ministerial duty to employ and appropriate funds for an Auditor. Based on the plain and unambiguous language of § 25-9, however, we conclude that employing and appropriating funds for an Auditor is a discretionary function, not a ministerial act that can be compelled by mandamus.
[3,4] Section 25-9 provides in part that "[t]he [A]uditor committee shall retain the services of [an A]uditor and his or her support staff . . . ."[5] In addition, § 25-9F(2) provides:

Preliminary budgeting. Initial budget obligations shall be provided before January 1, 2001, by city council fund transfer ordinances to sustain the initial startup expenditures as required. Thereafter, and in subsequent years, the. . . [A]uditor shall be appropriated funds in the normal city budgeting process similar to other city departments, and shall be included within the police department and fire department budget.
When analyzing the Omaha Municipal code, a legislative enactment, we follow the same rules as those of statutory analysis.[6] Absent anything to the contrary, statutory language is to be given its plain meaning, and a court will not look beyond the statute or interpret it when the meaning of its words is plain, direct, and unambiguous.[7]
Section 25-9 was adopted on July 25, 2000, during budget preparations for the fiscal year 2001. Because § 25-9 was adopted in the middle of budget preparations, the first sentence of § 25-9F(2), entitled "Preliminary budgeting," provides that the preliminary budget obligations shall be provided by fund transfer ordinances. The clear import of the first sentence of § 25-9F(2) is to establish initial budgeting for the office of the Auditor by fund transfer notices. The second sentence of § 25-9F(2), however, establishes the process by which an Auditor shall be funded in subsequent years. The plain and unambiguous language provides that after the initial budgeting process, the Auditor, like other employment positions, would be appropriated funds in the normal city budgeting process. contrary to the Relators' assertion, § 25-9F(2) does not mandate funding for the Auditorit mandates how the position is to be funded, if the city council, in its normal budgeting process, allocates such funding. We do not read § 25-9 as compelling the employment of, or an appropriation for, an Auditor.
[5-10] Mandamus lies only to enforce the performance of a mandatory ministerial act or duty and is not available to control judicial discretion.[8] Mandamus is available to enforce the performance of ministerial duties of a public official but is not available if the duties are quasi-judicial or discretionary.[9] A duty imposed by law which may be enforced by writ of mandamus must be one which the law specifically enjoins as a duty resulting from an office, trust, or station.[10] The general rule is that an act or duty is ministerial only if there is an absolute duty to perform in a specified manner upon the existence of certain facts.[11] A duty or act is ministerial when there is no room for the exercise of discretion, official or otherwise, the performance being required by direct and positive command of the law.[12] A ministerial duty is not dependent upon a public officer's judgment or discretionit is performed under the conditions specified in obedience to the mandate of legal authority, without regard for the exercise of the officer's judgment upon the propriety of the act being done.[13]
[11,12] here, § 25-9 does not create an absolute duty to perform in a specified manner. As explained above, the plain and unambiguous language of § 25-9 states that the employment and funding of an Auditor is subject to the normal budgeting process of the city of Omaha. The city's budgeting process is a discretionary activity and not subject to mandamus. While the word "shall" may render a particular provision mandatory in character, when the spirit and purpose of the legislation require that the word "shall" be construed as permissive rather than mandatory, such will be done.[14] because a legislative body cannot bind its successors,[15] we do not read the statement in § 25-9F(2) that the Auditor "shall be appropriated funds in the normal city budgeting process similar to other city departments" as mandating an allocation of funds, as opposed to a permissive exercise of the discretion associated with the normal budgeting process.
And it is clear that whether the city of Omaha should employ and fund an Auditor is a discretionary public policy decision that is entrusted to the city, as are the myriad of policy decisions involved in setting the city's budget. The decision whether to have an Auditor, and whether or how to fund the position of Auditor, requires a policy determination that is, in the absence of a constitutional question, clearly for the legislative branch. That legislative discretion is recognized by state law, which affords a metropolitan class city council the power and duty to appoint a chief of police, "and all other members of the police force to the extent that funds may be available to pay their salaries, and as may be necessary to protect citizens and property, and maintain peace and good order."[16] Although it is certainly a laudatory goal to "increase public confidence in the internal investigations process"[17] of Omaha citizens' complaints against police officers and firefighters, it is beyond our judicial authority to force the city, by granting the writ of mandamus, to appoint and fund the Auditor. The employment and funding of an Auditor is a discretionary function, not a ministerial act that can be compelled by mandamus. This is made plain by the fact that § 25-9 expressly incorporates the normal city budgeting process, instead of establishing a separate appropriation process, or specifying an amount to be appropriated. By contrast, the cases relied upon by the Relators involve circumstances in which the amount of public funds to be expended in the performance of a ministerial duty were specified by the same law that created the ministerial duty in the first place.[18] For example, in State ex rel. Agricultural Extension Service v. Miller,[19] we found a ministerial duty to have been created when the state statutes establishing a budget for the county agricultural extension service created a process "different than the method provided by law for the preparation of the general county budget." We noted that the county board had "a general duty and power to coordinate and to reduce, alter, or amend the county budget," but that the statute at issue in that case had the "obvious intent" to specify funding and "not vest it in the county board under its general budget-making powers."[20] In other words, the duty of the county board in Miller was ministerial precisely because it had been removed from the normal budgeting process. The ordinance at issue in this case, by contrast, expressly incorporates the normal budgeting processand therefore is subject to the discretion that is inherently part of that process.
And the Relators' petition necessarily implicates judicial involvement in the city's budgeting process. The Relators petitioned the court to issue a writ "commanding" the city council to comply with § 25-9 "by immediately appropriating funding for the office of the . . . Auditor, and to employ and appropriate funding for the . . . Auditor so long as required by law, or be held in contempt by this court." The court could not enforce such a writ unless it was willing to determine, not only whether funding has been appropriated for an Auditor, but whether that funding is sufficient to support the office. This is not a case in which the respondent's legal duty was clearly articulatedfor example, filling a vacancy in an office created by state law,[21] or abiding by merit selection or civil service rules.[22] The duty at issue in this case requires the exercise of discretion that cannot be commanded by a court.
In this mandamus action, the Relators bear the burden of demonstrating clearly and conclusively that they are entitled to the particular thing they wantthe funding and appointment of the Auditorand that the city council is legally obligated to act.[23] The Relators have failed to carry their burden of demonstrating that § 25-9 imposes a clear legal duty on the city council to employ and appropriate funding for an Auditor. Because the Relators have not demonstrated that they had a clear right to the relief they sought, we conclude that the district court did not err in denying the Relators their requested writ of mandamus.
The Relators' final assignment of error is that the district court erred in admitting certain evidence because it was irrelevant. Specifically, the Relators contend that the following evidence should not have been admitted: a portion of the Omaha city charter dealing with the budget and finance, a copy of Omaha's 2008 budget and resolutions approving the budget, an affidavit of the Omaha city clerk, an affidavit of the Omaha personnel finance director, and the testimony of the staff assistant to the Omaha city council. Essentially, the Relators argue that because the foregoing evidence is unnecessary in interpreting § 25-9, it was error for the court to admit and rely on it.
[13] but as noted above, interpretation of a municipal ordinance is a question of law, on which we reach an independent, correct conclusion irrespective of the determination made by the court below.[24] We need not determine whether the district court inappropriately relied on evidence in interpreting § 25-9, because even if it did, such error was harmlessour independent analysis of § 25-9 cures any such error.[25]

CONCLUSION
The Relators were not entitled to the writ of mandamus ordering the city council to appoint and fund an Auditor. Therefore, we affirm the order of the district court.
AFFIRMED.
MILLER-LERMAN, J., participating on briefs.
NOTES
[1] Ahmann v. Correctional Ctr. Lincoln, 276 Neb. 590, 755 N.W.2d 608 (2008).
[2] Steffen v. Progressive Northern Ins. Co., 276 Neb. 378, 754 N.W.2d 730 (2008).
[3] State ex rel. Upper Republican NRD v. District Judges, 273 Neb. 148, 728 N.W.2d 275 (2007); Crouse v. Pioneer Irr. Dist., 272 Neb. 276, 719 N.W.2d 722 (2006).
[4] State ex rel. Upper Republican NRD, supra note 3.
[5] § 25-9b(1).
[6] Brunken v. Board of Trustees, 261 Neb. 626, 624 N.W.2d 629 (2001). See, also, Moulton v. Board of Zoning Appeals, 251 Neb. 95, 555 N.W.2d 39 (1996).
[7] McNally v. City of Omaha, 273 Neb. 558, 731 N.W.2d 573 (2007).
[8] State ex rel. FirsTier Bank v. Mullen, 248 Neb. 384, 534 N.W.2d 575 (1995).
[9] Crouse, supra note 3.
[10] State ex rel. City of Alma v. Furnas Cty. Farms, 257 Neb. 189, 595 N.W.2d 551 (1999); Neb. rev. Stat. § 25-2156 (Reissue 2008).
[11] State ex rel. Musil v. Woodman, 271 Neb. 692, 716 N.W.2d 32 (2006); Krolikowski v. Nesbitt, 257 Neb. 421, 598 N.W.2d 45 (1999).
[12] Crouse, supra note 3.
[13] See State of Nebraska ex rel. Line v. Kuhlman, 167 Neb. 674, 94 N.W.2d 373 (1959).
[14] Troshynski v. Nebraska State Bd. of Pub. Accountancy, 270 Neb. 347, 701 N.W.2d 379 (2005).
[15] See, State ex rel. Stenberg v. Moore, 249 Neb. 589, 544 N.W.2d 344 (1996); State ex rel. City of Grand Island v. Union Pacific R. R. Co., 152 Neb. 772, 42 N.W.2d 867 (1950). See, also, Kometscher v. Wade, 177 Neb. 299, 128 N.W.2d 781 (1964).
[16] See Neb. rev. Stat. § 14-601 (Reissue 2007) (emphasis supplied).
[17] § 25-9A.
[18] See, e.g., State ex rel. Ledbetter v. Duncan, 702 S.W.2d 163 (Tenn. 1985); Sturgis v. County of Allegan, 343 Mich. 209, 72 N.W.2d 56 (1955); Foster v. Taylor et al., 210 S.C. 324, 42 S.E.2d 531 (1947); People ex rel. O'Loughlin v. Prendergast, 219 N.Y. 377, 114 N.E. 860 (1916); Metro. Dist. Com'n v. City of Cambridge, 12 Mass. App. 921, 424 N.E.2d 272 (1981); State ex rel. Hall v. Bauman, 466 S.W.2d 177 (Mo. App. 1971); Lohr v. Sullenberger, No. CL 03 000001 00, 2003 WL 1923790 (Va. Cir. Apr. 8, 2003).
[19] State ex rel. Agricultural Extension Service v. Miller, 182 Neb. 285, 287, 154 N.W.2d 469, 471 (1967).
[20] Id. at 288, 154 N.W.2d at 471.
[21] See, Dieringer v. Bachman, 131 W. Va. 562, 48 S.E.2d 420 (1948); McMullen v. City Manager, 300 Mich. 166, 1 N.W.2d 494 (1942); Board of Commissioners v. Montgomery, 170 Ga. 361, 153 S.E. 34 (1930); State ex rel. Maes v. Wehmeyer, 324 Mo. 933, 25 S.W.2d 456 (1930); State ex rel. Hartman v. Thompson, 627 So. 2d 966 (Ala. App. 1993).
[22] See, Blair v. Coey, 113 Ohio App. 3d 325, 680 N.E.2d 1074 (1996); Irmscher v. McCue, 504 N.E.2d 1034 (Ind. App. 1987).
[23] See Woodman, supra note 11.
[24] See Brunken, supra note 6.
[25] See Alsobrook v. Jim Earp Chrysler-Plymouth, 274 Neb. 374, 740 N.W.2d 785 (2007).