Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/06/2017 08:12 AM CDT

Matthew Landrum et al., appellants and cross-appellees,
v. City of Omaha Planning Board et al.,
appellees and cross-appellants, and
Daryl Leise et al., appellees.

___ N.W.2d ___

Filed July 14, 2017.    No. S-16-383.

1. **Ordinances: Appeal and Error.** Interpretation of a municipal ordinance is a question of law on which an appellate court reaches an independent conclusion irrespective of the determination made by the court below.

2. **Administrative Law: Appeal and Error.** In reviewing a decision based on a petition in error, an appellate court determines whether the inferior tribunal acted within its jurisdiction and whether the inferior tribunal's decision is supported by sufficient relevant evidence.

3. **Standing: Words and Phrases.** Standing is the legal or equitable right, title, or interest in the subject matter of the controversy.

4. **Jurisdiction: Standing.** The requirement of standing is fundamental to a court's exercise of jurisdiction, and either a litigant or a court before which a case is pending can raise the question of standing at any time during the proceeding.

5. **Standing: Zoning.** It is generally held that an adjacent landowner has standing to object to the rezoning of property if such landowner shows some special injury separate from a general injury to the public.

6. **Municipal Corporations: Actions: Appeal and Error.** An appeal or error proceeding does not lie from a purely legislative act by a public body to which legislative power has been delegated, and the only remedy in such cases is by collateral attack, that is, by injunction or other suitable action.

7. **Municipal Corporations: Ordinances: Zoning.** A zoning ordinance constitutes the exercise of a governmental and legislative function, and a city council adopting a rezoning ordinance which amends a general zoning ordinance acts in a legislative capacity.

8. **Jurisdiction: Appeal and Error.** When a trial court lacks the power, that is, jurisdiction, to adjudicate the merits of a claim, the Supreme Court also lacks power to adjudicate the merits of the claim.

9. **Standing: Jurisdiction: Proof.** A party invoking a tribunal's jurisdiction has the burden to establish the elements of standing.

10. **Appeal and Error.** An issue not presented to the trial court may not be raised on appeal.

11. **Administrative Law: Evidence: Appeal and Error.** The reviewing court is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact, and the evidence is sufficient to support an administrative agency's decision if the agency could reasonably find the facts as it did based on the testimony and exhibits contained in the record.

12. **Administrative Law: Due Process: Jurisdiction: Notice: Evidence: Appeal and Error.** A court reviewing an order of an administrative agency must determine whether there has been due process of law; and this includes an inquiry into the jurisdiction of the agency, whether there was reasonable notice and an opportunity for fair hearing, and whether the finding was supported by evidence.

Appeal from the District Court for Douglas County: J. MICHAEL COFFEY, Judge. Affirmed in part, and in part vacated and dismissed.

Rex J. Moats and Margaret A. McDevitt, of Moats Law Firm, P.C., L.L.O., for appellants.

Russell S. Daub for appellees Daryl Leise et al.

Alan M. Thelen, Deputy Omaha City Attorney, for appellees City of Omaha Planning Board et al.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

KELCH, J.

## I. INTRODUCTION

Matthew Landrum, Shandra Landrum, Rex Moats, Diane Moats, Edward Malesa, and Valerie Malesa (Homeowners) appeal the order of the district court for Douglas County that dismissed their amended petition in error. The Homeowners

sought to challenge a conditional use permit issued by the Omaha Planning Board (Planning Board) and a special use permit and rezoning granted by the Omaha City Council (City Council). The City of Omaha (City), the Planning Board, and the City Council cross-appeal, arguing that the Homeowners' petition in error was untimely and that the district court lacked subject matter jurisdiction. We dismiss for lack of jurisdiction that portion of the Homeowners' appeal concerning rezoning and a special use permit, and we vacate the corresponding portion of the district court's order. However, because the Planning Board acted within its jurisdiction, based its findings on sufficient evidence, and afforded the Homeowners due process, we affirm the district court's order in regard to the conditional use permit.

## II. BACKGROUND

### 1. PROCEDURAL BACKGROUND

This appeal arises from permits and rezoning granted to Daryl Leise; Redbird Group, LLC; and Ray Anderson, Inc. (collectively the Developers), for a proposed convenience storage and warehouse facility to be constructed on real estate in the Omaha area (subject property). Ray Anderson, Inc., is the current owner of the subject property.

The City carries out its zoning powers through the enactment and enforcement of its zoning code, Omaha Municipal Code, chapter 55.

The Omaha Municipal Code designates various base zoning districts, including a "community commercial" (CC) district, which is the designation of the subject property. Omaha Mun. Code, ch. 55, art. VIII, § 55-362 (1980). Further, the code provides for a special "overlay district" that can be "overlaid" upon a property in addition to its base zoning district. Omaha Mun. Code, ch. 55, art. XI, § 55-682 (2007). One type of overlay district is the "major commercial corridor" (MCC) district, for which Leise applied in this case. See *id.* The zoning regulations enumerate various use types. For the

subject property, Leise sought the use types "[w]arehousing and distribution (limited)," see Omaha Mun. Code, ch. 55, art. III, § 55-49(h) (1980) (emphasis omitted), and "[c]onvenience storage," see Omaha Mun. Code, ch. 55, art. III, § 55-45(m) (2007) (emphasis omitted). The "[w]arehousing and distribution (limited)" use type is allowed subject to approval of a conditional use permit. Omaha Mun. Code, ch. 55, art. VIII, § 55-364(e) (2008). Similarly, a special use permit is required for convenience storage in the CC district. Omaha Mun. Code, ch. 55, art. VIII, § 55-365(c) (2008).

As noted above, Leise sought to place the subject property into the MCC overlay district while maintaining the base CC zoning district. Buildings built within the MCC overlay district are subject to certain urban design rules. See Omaha Mun. Code, ch. 55, art. XI, §§ 55-682 through 55-687 (2007), and Omaha Mun. Code, ch. 55, art. XXII, §§ 55-927 through 55-936 (2007). These urban design rules provide for enhanced regulation of screening, parking, site and building access, landscaping, and general building design guidelines. *Id.*

In sum, to proceed with the proposed project, the Omaha Municipal Code required three zoning approvals from the City: a conditional use permit, which could be issued by the Planning Board; a special use permit, which could be granted by the City Council after a recommendation by the Planning Board; and a rezoning, which could be granted by the City Council after a recommendation by the Planning Board, to place the subject property within the MCC overlay district. See Omaha Mun. Code, ch. 55, art. XX, § 55-883(h) and (k) (2008), § 55-884(g)(3) (2008), and § 55-886(f) and (g) (1980).

## 2. MUNICIPAL PROCEEDINGS

The subject property is a 4.75-acre vacant lot at the northeast corner of 204th Street (Highway 31) and Farnam Street, located near a residential area. Leise's statement of proposed use and plans for the subject property anticipated constructing

a three-story storage building, resembling an office building, with internal storage spaces. Leise also proposed constructing five single-story storage buildings with garage-type stalls. The storage facilities would contain 700 storage spaces for rental to customers, with estimated visits of two or three cars per hour.

Leise submitted a proposed concept design to the City's planning department. The concept design, dated February 17, 2015, provided preliminary specifications to demonstrate compliance with site development, landscaping, and buffer requirements for a CC property.

After reviewing the proposed concept design, the planning department issued a responsive letter, dated February 27, 2015. The planning department summarized the proposed project's classification and permit requirements under the Omaha Municipal Code.

The planning department scheduled the matter for a May 6, 2015, hearing before the Planning Board. On March 20, the planning department issued the following notice via a letter to residents near the proposed project site: "NOTICE OF REQUEST FOR: Approval of a Special Use Permit to allow Convenience storage and a Conditional Use Permit to allow Warehousing and distribution (limited) in a CC-Community Commercial District, with approval of an MCC-Major Commercial Corridor Overlay District." The notice further invited any interested persons to hear and comment on the proposal, which was on file at the planning department, and provided details about the approval procedure and hearing.

On April 6, 2015, Leise submitted a planning department zoning application form. The application form allowed the applicant to check boxes to select a special use permit, a conditional use permit, and "Other." Leise's application selected a special use permit and "Other," specifying "Adopt MCC Overlay District," but a conditional use permit was not selected. The application form provided basic factual information,

including the address and legal description of the subject property, its owner, the applicant, a contact person, and information on proposed building, parking, and landscaping. Leise incorrectly identified the property owner as "Ray Anderson c/o Anderson Food Shops," rather than "Ray Anderson, Inc." Leise listed himself as the applicant and contact person. There were illegible signatures on the lines designated for "Owner's Signature" and "Applicant Signature." Under the applicant's signature, the form states, "(If not the property owner, the applicant certificates [sic] with this signature to be the authorized agent of the property owner.)"

On April 29, 2015, the planning department issued a recommendation report that analyzed the proposed project in light of applicable portions of the Omaha Municipal Code. The report noted that the adjacent land use was primarily residential. It stated that before the City annexed the subject property and converted it to a CC district, it was originally zoned "C-3 Highway Commercial" by the City of Elkhorn, a designation which allowed warehousing and distribution as a permitted use. The report noted that conditionally, Leise's permit request was in substantial conformance with "the zoning ordinance" and the City's master plan. The report further evaluated the proposed uses pursuant to specific portions of Omaha Mun. Code, ch. 55, art. XX, § 55-885 (2008), which sets forth criteria for the review and evaluation of applications for conditional use permits and special use permits. It deduced that the proposed uses would comply with those criteria and that the economic impact on surrounding properties would be acceptable. The report recommended (1) approval of "the MCC-Major Commercial Overlay District," (2) approval of the special use permit to allow convenience storage in "a CC-MCC District" subject to plan revisions for compliance with zoning regulations, and (3) approval of the conditional use permit to allow "*Warehousing and distribution (limited)* in a CC-MCC District," subject to plan revisions for compliance with zoning regulations.

On May 5, 2015, residents near the subject property submitted to the Planning Board a "Petition" with 52 signatures, expressing opposition to the proposed project. Residents also submitted letters and email messages detailing the reasons for their opposition, which included safety risks, lack of sufficient buffer space from adjacent homes, increased risk of crime, excessive light from the development, lack of continuity with the adjacent homes, and adverse effects on property values.

The Planning Board held a public hearing on Leise's requests on May 6, 2015. Leise appeared and described the proposal. Several neighborhood opponents also spoke, including one of the Homeowners. Opponents generally expressed that they were not yet familiar with the plan. They opined that the structure would not "fit" with the nearby residential neighborhoods and may contribute to crime and obstruct views. A real estate broker with 14 years' experience and others stated that the structure would be detrimental to the neighboring residents' property values. Other concerns included lighting, safety, and compliance with the City's master plan. Some opponents stated that they had not been personally informed about the project and that they felt they had been "ambushed." Another complained that some residents near the proposed project site did not receive the notice of hearing from the Planning Board. The Planning Board laid over the case to allow Leise and the neighboring residents to meet and discuss the issues.

Leise submitted revised plans, and the City's planning department issued a revised recommendation report on July 29, 2015. The revised recommendation report found that the revised plans "addressed most of the conditions listed in the previous recommendation report." The report noted that the Developers needed to provide a floor plan for the indoor storage facility. Like the previous report, it provided a written analysis of the project in light of § 55-885 and concluded that other than a few conditions to address, "the proposed uses

will comply with all the applicable base district development standards and [are] consistent with the criteria in Section 55-885." The planning department added that "[t]he proposed uses are consistent with and carry out the goals and objectives of the City['s] Master Plan."

On August 5, 2015, the Planning Board conducted another hearing. The planning department again issued a notice letter regarding the proposed conditional use permit, special use permit, and rezoning. At the hearing, the Developers' attorney addressed issues including tree buffers, the "upgraded design," topography, compliance with size regulations, views from the exterior, security issues, and fencing and buffering. He also noted the meetings and contacts between Leise and the residential neighbors.

At the August 5, 2015, hearing, neighbors again expressed concerns about views from the exterior, lighting, the City's master plan, compatibility with the neighborhood, and safety. One of the Homeowners implied that demographically, owners of nearby starter homes valued at about $125,000 would be more likely to use the storage facility than homeowners like him with large homes valued at $400,000. Following these remarks, a board member advised the Homeowner and others present to be "very careful about generalizing about people." The Homeowner reiterated:

> The point I'm trying to make here is that it is a different type of housing in this neighborhood that would be next to that type of facility. It is not $125,000 homes, it is not whatever they are for trailer homes. These are houses that are valued between 300,000 and $400,000.

Later in the hearing, another board member referred to premeeting discussions, stating, "[I]t was socioeconomic impact discussion that really sort of floored me because it dealt with the income levels of people who will be using this type of storage facility." He also alluded to the Homeowner's comments and said:

[T]hat's offensive to me, okay? It's offenses [sic] to have that type of discussion about the construction of a storage facility.

I'm convinced that if we took the same structure that [Leise] wants to build and put something else on the inside of it, we wouldn't get this argument because it wouldn't be a storage facility . . . .

Immediately following the hearing, the Planning Board voted in favor of the conditional use permit, special use permit, and MCC overlay rezoning. Thus, the conditional use permit was approved, subject to conditions, and the special use permit and rezoning were forwarded to the City Council for final action.

On September 29, 2015, the City Council held a public hearing on the special use permit and rezoning, designated as separate agenda items. Prior to the hearing before the City Council, nearby residents submitted to the City Council an "Opposition Document" detailing their concerns about the proposed project. Two hundred ninety-two neighboring residents, including at least three of the Homeowners, signed "petitions" that accompanied the opposition document. The opposition document was later filed in the City clerk's office. At the hearing, the Developers' attorney again spoke. In addition, some neighbors voiced concerns similar to those discussed at previous hearings. The City Council voted to lay over the case for 3 weeks.

On October 20, 2015, the City Council held another hearing. The Developers' attorney stated that in response to the neighbors' concerns, the Developers had further revised the plan, adding seven features which the Developers listed in a letter to the City Council. The seven features pertained to enhanced landscaping and finishes to improve the appearance of the proposed development. At the hearing, the Developers' attorney reported that one of the homeowners' associations that had formerly objected to the project had now approved it.

The Homeowners' representative stated at the hearing that they had presented an "alternative design" to the Developers. The Developers' attorney responded that they had evaluated the cost of the alternative design relative to the potential income and concluded that it would be an "economic disaster."

The City Council voted 5 to 2 to approve the MCC rezoning and ultimately passed an ordinance to implement it. The City Council also approved the special use permit by a vote of 5 to 2, subject to compliance with various regulations and conditions, including the seven features listed in the Developers' October 19, 2015, letter.

### 3. District Court Proceedings

On October 21, 2015, the Homeowners filed a petition in error with the district court, seeking to challenge the approvals of the conditional use permit, special use permit, and rezoning.

On October 30, 2015, the Homeowners filed an application for a temporary restraining order and temporary injunction in district court. They sought to prevent the issuance of any permits, the implementation of the MCC overlay district, and the development of the subject property.

On November 2, 2015, the Homeowners filed an amended petition in error. The Homeowners requested vacation or reversal of (1) the Planning Board's approval of the conditional use permit, (2) the City Council's passage of a resolution that approved the special use permit, and (3) the City Council's passage of an ordinance implementing the MCC overlay district. The Homeowners claimed that the decisions of the City Council and the Planning Board were illegal, not supported by the evidence, and thus arbitrary, unreasonable, clearly wrong, and a violation of due process. Specifically regarding the special use permit and the MCC overlay district, the Homeowners alleged, among other things, that Leise had failed to provide accurate information about the ownership of the subject property or his authority to develop it.

On November 9, 2015, the Developers filed a motion to dismiss the Homeowners' amended petition in error. However, on November 25, they withdrew the motion to dismiss and filed a motion to affirm the special use permit, along with the MCC overlay district. The Developers alleged that while the Homeowners' amended petition in error was pending, the special use permit had been issued and the ordinance approving the MCC overlay district had been passed and signed by the mayor. The Developers further averred that the City entities' actions appeared to comply with the law and that the Homeowners' claims were not specific enough to meet their burden of proving otherwise.

On December 1, 2015, the City Council, the Planning Board, and the City filed an answer essentially denying the allegations of the amended petition in error. They affirmatively alleged that the Homeowners lacked standing, that the district court lacked subject matter jurisdiction over some or all of the claims, that the Homeowners made an untimely challenge of the conditional use permit, and that the City's rezoning of the subject property was not reviewable by an error proceeding.

On February 17, 2016, the district court held a hearing on the amended petition in error and received the administrative record, including chapter 55 of the Omaha Municipal Code. On that date, the district court also determined that it did not have subject matter jurisdiction over the application for a temporary restraining order and temporary injunction.

In an April 11, 2016, order, the district court affirmed the determinations of the City Council and the Planning Board and dismissed the amended petition in error with prejudice. The district court stated that after reviewing the evidence, it found that the Planning Board and the City Council acted within their jurisdiction and that their determinations were supported by sufficient relevant evidence. This appeal followed.

## III. ASSIGNMENTS OF ERROR

On direct appeal, the Homeowners assign that the district court erred in (1) finding that the Planning Board acted within its jurisdiction and had sufficient evidence to approve the conditional use permit, (2) finding that the City Council had jurisdiction and sufficient evidence to approve the special use permit, (3) finding that the City Council acted within its jurisdiction and had sufficient evidence to approve the MCC rezoning, and (4) affirming the determinations of the Planning Board and City Council, because the record showed that the Planning Board and City Council did not act with due process of law.

On cross-appeal, the City, the Planning Board, and the City Council assign that the district court erred in (1) failing to rule that the Homeowners' petition in error was untimely as to the conditional use permit, (2) failing to rule that the Homeowners lacked standing as to the rezoning challenge and that the district court thereby lacked subject matter jurisdiction, and (3) failing to rule that the petition in error was an improper remedy as to the rezoning, thereby precluding subject matter jurisdiction.

## IV. STANDARD OF REVIEW

[1] Interpretation of a municipal ordinance is a question of law, on which we reach an independent conclusion irrespective of the determination made by the court below. See *State ex rel. Parks v. Council of City of Omaha*, 277 Neb. 919, 766 N.W.2d 134 (2009).

[2] In reviewing a decision based on a petition in error, an appellate court determines whether the inferior tribunal acted within its jurisdiction and whether the inferior tribunal's decision is supported by sufficient relevant evidence. *Crown Products Co. v. City of Ralston*, 253 Neb. 1, 567 N.W.2d 294 (1997).

## V. ANALYSIS

### 1. Cross-Appeal

We begin by addressing the cross-appeal of the City, the Planning Board, and the City Council, because its resolution is partially dipositive of the Homeowners' direct appeal.

#### (a) Timeliness of Petition in Error

On cross-appeal, the City, the Planning Board, and the City Council contend that the district court lacked subject matter jurisdiction because the Homeowners untimely filed their petition in error more than 30 days after the Planning Board's decision to approve the conditional use permit.

Neb. Rev. Stat. §§ 25-1905 and 25-1931 (Reissue 2016) govern proceedings in error and require that within 30 days after the rendition of the final judgment or order sought to be reversed, vacated, or modified, a petitioner in error must file a petition and an appropriate transcript containing the final judgment or order. See, *Abdullah v. Nebraska Dept. of Corr. Servs.*, 245 Neb. 545, 513 N.W.2d 877 (1994); *Glup v. City of Omaha*, 222 Neb. 355, 383 N.W.2d 773 (1986). Here, the Homeowners filed their petition in error with the district court on October 21, 2015, unquestionably more than 30 days after the Planning Board approved the conditional use permit on August 5. However, the Homeowners contend that the Planning Board's approval was not a final order. We agree.

The Homeowners point to the Omaha Municipal Code, which provides that "[a]pproval of a conditional use permit by the planning board shall be effective five days after action, unless associated with an application for rezoning or subdivision approval." § 55-883(j). In this instance, the request for the conditional use permit was associated with an application for rezoning. Therefore, we apply § 55-883(c) of the Omaha Municipal Code, which addresses concurrent applications. Section 55-883(c) provides in part, "The official effective date of a conditional use permit shall be the effective date

of an ordinance approved by the city council implementing rezoning of the site." In this case, the conditional use permit went into effect on October 20, 2015, when the City Council passed the ordinance approving the amendment of the MCC overlay district. On the same date, the conditional use permit became a final order, and the Homeowners filed their petition in error on October 21, within 30 days of the final order. See Neb. Rev. Stat. § 25-1902 (Reissue 2016) (defining final order for purposes of review on petition in error). Therefore, the district court had subject matter jurisdiction. See Neb. Rev. Stat. § 25-1901 (Reissue 2016) (providing for district court's appellate jurisdiction over any "final order made by any tribunal, board, or officer exercising judicial functions") and § 25-1931.

### (b) Standing

Next, the City, the Planning Board, and the City Council contend that the Homeowners failed to allege or prove any special injury arising from the "imposition of the stricter MCC overlay rules onto the subject property" and that therefore, they do not have standing. Brief for appellees on cross-appeal at 39. The City, the Planning Board, and the City Council point out that the MCC overlay district actually is more restrictive to future development than the existing commercial base district and provides the Homeowners with added protection.

[3-5] Standing is the legal or equitable right, title, or interest in the subject matter of the controversy. *Smith v. City of Papillion*, 270 Neb. 607, 705 N.W.2d 584, 590 (2005). The requirement of standing is fundamental to a court's exercise of jurisdiction, and either a litigant or a court before which a case is pending can raise the question of standing at any time during the proceeding. *Id.* It is generally held that an adjacent landowner has standing to object to the rezoning of property if such landowner shows some special injury separate from a general injury to the public. See *id.*

The Homeowners point out that since they live adjacent to or within 300 feet of the proposed project, they have standing, like the property owners in *Smith v. City of Papillion, supra*. There, we noted that Neb. Rev. Stat. § 19-905 (Reissue 1997) required notice to owners of property within 300 feet of the proposed project in first-class cities such as Papillion and that the property owners' entitlement to such notice supported a finding of special injury. Here, the operative statute in metropolitan-class cities like Omaha is Neb. Rev. Stat. § 14-420 (Cum. Supp. 2016), which also requires notice to owners of property within 300 feet of the proposed project. See Neb. Rev. Stat. § 14-101 (Reissue 2012) (defining metropolitan-class cities). Thus, the Homeowners' entitlement to notice in this case tends to show the presence of a special injury. Further, in *Smith*, we noted that the finding of special injury was also supported by expert testimony that the proposed project would diminish property values in the area. We find similar evidence of a special injury in the instant case, where a real estate broker with 14 years of experience provided evidence to the Planning Board that the proposed changes would cause an adverse impact on the neighboring residents' property values. Although contradictory evidence was presented by way of the planning department report, the Homeowners met their initial burden to show standing to challenge the proposed uses and rezoning.

### (c) Jurisdiction

[6,7] Lastly, the City, the Planning Board, and the City Council contend that the City Council's decision on the application for rezoning was a legislative function and, therefore, not the proper subject of an error proceeding. Previously, we have found that "an appeal or error proceeding does not lie from a purely legislative act by a public body to which legislative power has been delegated" and that "the only remedy in such cases is by collateral attack, that is, by injunction or other suitable action." *In re Application of Frank*, 183 Neb.

722, 723, 164 N.W.2d 215, 216 (1969). We have held that a zoning ordinance constitutes the exercise of a governmental and legislative function and that a city council adopting a rezoning ordinance which amends a general zoning ordinance acts in a legislative capacity. *Giger v. City of Omaha*, 232 Neb. 676, 442 N.W.2d 182 (1989); *Copple v. City of Lincoln*, 210 Neb. 504, 315 N.W.2d 628 (1982); *In re Application of Frank, supra.*

But as pointed out by the Homeowners, although the above-cited cases preclude a petition in error following a legislative act, none of them deals with a simultaneous rezoning and special use permit. See, *Giger v. City of Omaha, supra*; *Copple v. City of Lincoln, supra*; *In re Application of Frank, supra*. Our case law does not address that situation. And the question becomes whether the City Council acted legislatively or judicially when faced with simultaneous requests for rezoning and a special use permit.

The Homeowners contend that by conducting simultaneous hearings on the special use permit and the rezoning, the City Council acted judicially. They argue:

> In deciding to include Leise's convenience storage and warehouse project within the MCC Overlay District, the . . . City Council acted judicially and not legislatively. The hearings on the amendment and the special use permit were at the same time and date, had the same participants and opponents and evidence, and utilized the same hearing procedures.

Reply brief for appellants at 10.

To support their argument, the Homeowners cite *McNally v. City of Omaha*, 273 Neb. 558, 731 N.W.2d 573 (2007), for the proposition that when a tribunal is required to conduct a hearing and receive evidence, it exercises a judicial function in determining questions of fact. And under Neb. Rev. Stat. § 25-1903 (Reissue 2016), proceedings to obtain a reversal, vacation, or modification of a final order made by any tribunal, board, or officer exercising judicial functions shall be

by a petition entitled "petition in error." However, *McNally* involved an administrative hearing before a building review board and not a hearing before a city council. Further, we noted in *McNally* that there was an adversarial hearing where evidence had been presented by both sides and that the building review board exercised "'judicial functions.'" 273 Neb. at 564, 731 N.W.2d at 580.

Where our case law has not explicitly stated whether a proceeding is quasi-judicial or legislative, the nature of the proceeding in question is a key factor in making that determination. For example, in *In re Application of Olmer*, 275 Neb. 852, 752 N.W.2d 124 (2008), we found that the county board acted quasi-judicially in denying an application for a conditional use permit; in so finding, we noted that the record included exhibits offered and received and a stipulated supplemental record which included a deposition with attached exhibits.

Here, the record reflects that the special use permit and rezoning applications proceeded at the same hearing pursuant to separate agenda items. Further, the record does not show that evidence was offered and received or that testimony was offered. Rather, the Homeowners' opposition document was simply submitted to the City Council prior to the hearing and later filed with the City clerk's office. Several neighboring residents, including some of the Homeowners, also presented argument at the two City Council hearings. Although we recognize that various boards and councils do not function as courts in the strict sense, parties cannot transform an otherwise legislative proceeding into a quasi-judicial function or establish a quasi-judicial record by simply presenting arguments and handing documents to the presiding body. In light of the nature of the proceedings at issue here, we conclude that the City Council acted as a legislative body in granting the rezoning request and in granting the special use permit. Accordingly, a request for a permanent injunction, not a petition in error, was the proper means to seek review of both determinations.

[8] Because the Homeowners filed a petition in error to review both the rezoning and special use permit approvals by the City Council, the district court did not have jurisdiction to proceed on those issues, and as a result, neither does this court. When a trial court lacks the power, that is, jurisdiction, to adjudicate the merits of a claim, the Supreme Court also lacks power to adjudicate the merits of the claim. *Nebraska State Bar Found. v. Lancaster Cty. Bd. of Equal.*, 237 Neb. 1, 465 N.W.2d 111 (1991). We therefore dismiss for lack of jurisdiction that portion of the Homeowners' appeal regarding the City Council's approval of the rezoning and the special use permit. Consequently, we need not address the Homeowners' assignments of error concerning the rezoning and the special use permit. *Johnson v. Nelson*, 290 Neb. 703, 861 N.W.2d 705 (2015) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

## 2. DIRECT APPEAL

Our holding regarding the cross-appeal limits our consideration of the Homeowners' direct appeal to only the following issues related to the conditional use permit: whether the Planning Board acted within its jurisdiction, whether it had sufficient evidence to approve the conditional use permit, and whether it acted with due process of law.

### (a) Jurisdiction

[9] The Homeowners claim that the district court erred in finding that the Planning Board acted within its jurisdiction. In reviewing a decision based upon a petition in error, an appellate court determines, among other things, whether the inferior tribunal acted within its jurisdiction. See *Crown Products Co. v. City of Ralston*, 253 Neb. 1, 567 N.W.2d 294 (1997). A party invoking the tribunal's jurisdiction has the burden to establish the elements of standing. *Field Club v. Zoning Bd. of Appeals of Omaha*, 283 Neb. 847, 814 N.W.2d 102 (2012). The

Homeowners argue that Leise failed to show standing because the application he submitted did not reflect that he was the owner of the subject property or the agent of the owner and did not specifically request a conditional use permit.

[10] Both sides agree that Leise failed to check the box requesting a conditional use permit on the original application. On the other hand, the City, the Planning Board, and the City Council point out that the Homeowners allege Leise's seeking of a conditional use permit in their amended petition in error and that the hearings were all advertised to reflect that a conditional use permit was being considered. However, the controlling issue here is that the Homeowners failed to challenge, in their petition in error, Leise's failure to check the box requesting a conditional use permit on the original application. An issue not presented to the trial court may not be raised on appeal. *V.C. v. Casady*, 262 Neb. 714, 634 N.W.2d 798 (2001). Now, for the first time, the Homeowners raise the issue of Leise's failure to check the box requesting a conditional use permit, and we cannot consider that portion of their argument.

Similarly, the Homeowners now assert that Leise lacked standing to obtain the conditional use permit because his application did not demonstrate that he was the owner of the subject property or the agent of the actual owner. They argue that Leise failed to establish any agency relationship when he incorrectly designated "Ray Anderson c/o Anderson Food Shops" as the owner, rather than "Ray Anderson, Inc." However, the Homeowners did not raise this issue before the district court in the context of the conditional use permit. Instead, their amended petition in error alleged that because Leise's application failed to provide accurate information about the ownership of the subject property or the authority to develop it, the Planning Board and the City Council lacked sufficient evidence to approve *the special use permit and the rezoning*. As it pertains to the conditional use permit, then, this issue was neither presented to nor passed upon by the

district court, and the Homeowners cannot now raise it on appeal. See *id.*

### (b) Sufficiency of Evidence

[11] The Homeowners also argued to the district court and now on appeal that the Planning Board had insufficient evidence to approve the conditional use permit. In reviewing a decision based on a petition in error, an appellate court determines whether the inferior tribunal acted within its jurisdiction and whether the inferior tribunal's decision is supported by sufficient relevant evidence. *Crown Products Co. v. City of Ralston*, 253 Neb. 1, 567 N.W.2d 294 (1997). Further, the reviewing court is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact, and the evidence is sufficient to support an administrative agency's decision if the agency could reasonably find the facts as it did based on the testimony and exhibits contained in the record. *Geringer v. City of Omaha*, 237 Neb. 928, 468 N.W.2d 372 (1991).

In summary, the Homeowners argue that "[t]here was not sufficient competent evidence for approval of the conditional use permit for the industrial use of warehousing and distribution (limited) given the unrebutted evidence regarding lack of compatibility, adverse economic effects, and safety concerns." Brief for appellants at 30. Specifically, the Homeowners maintain that the City, the Planning Board, and the City Council failed to follow the criteria as set forth in § 55-885. Section 55-885(a) does set forth the criteria for review and evaluation for a conditional use permit. But § 55-885(b) further provides that "conditional use permits . . . shall be reviewed in accordance with the relevant criteria," which means that the reviewing body need not consider each listed standard. The record reflects that although the City, the Planning Board, and the City Council did not consider each factor within § 55-885, they gave due consideration to the factors relevant in this case.

Additionally, the Homeowners argue that the affected residential areas are composed of single-family dwellings in medium- to low-density neighborhoods and are not zoned to include convenience storage or warehousing as conditional or special uses. The Homeowners contend that the Planning Board approved the conditional use permit for limited industrial warehousing and distribution "without any consideration of extensive public opposition to the project and the unrebutted concerns regarding compatibility, adverse economic effects, and safety concerns." Brief for appellants at 29. Certainly, opposition and concerns were raised.

On the other hand, the City's planning department presented a report to the Planning Board dated April 29, 2015, which analyzed Leise's application. That report acknowledged the surrounding residential properties and that prior to the subject property's annexation by the City, warehousing and distribution were permitted uses for the subject property. It noted that Leise's permit request was in substantial conformance with the zoning ordinance and the City's master plan. Further, the planning department's report thoroughly analyzed the proposed project in light of the relevant criteria of § 55-885 and concluded that the economic impact on surrounding properties was acceptable. In an updated report dated July 29, 2015, the planning department opined that Leise had essentially complied with all requested changes to his proposal and recommended approval of the conditional use permit, the special use permit, and the rezoning, subject to certain conditions.

Although the Homeowners raised valid concerns, we cannot find from the record that the Planning Board did not evaluate the application using its own criteria as outlined in § 55-885 or that its decision was not supported by sufficient relevant evidence.

### (c) Due Process

Lastly, the Homeowners contend that they were not provided due process. They argue:

The [Planning] Board did not provide the opportunity to question . . . Leise or his counsel. Very little time was provided to present opposition evidence and concerns to the [Planning] Board. It was clear from the responses by the majority of [Planning] Board members to concerned citizens' testimony at the May 6 . . . and August 5, 2015 public meetings that the [Planning] Board had already decided in favor of . . . Leise's plan.

Brief for appellants at 33. The Homeowners obviously believe that the Planning Board did not sufficiently consider their viewpoint.

However, the two portions of the record that the Homeowners cite do not support their position. First, a Homeowner suggested that the storage facility would be frequented by owners of lower-end homes rather than owners of higher-end homes such as his. In response, a board member cautioned him and others present to be "very careful about generalizing about people." The Homeowners argue that this reflects that the Planning Board was not an "impartial adjudicator . . . and in effect became witnesses" for Leise. Brief for appellants at 32. Certainly, the Homeowner who offered the suggestion had the right to protect his property investment, which he believed would be adversely affected by the proposed uses. However, a Planning Board member's redirecting the Homeowner's comments does not equate with partiality or becoming a witness. Second, the Homeowners point to a portion of the record wherein a Planning Board member expressed his concerns about the Homeowners' arguing against the project from a socioeconomic standpoint. Again, we cannot find that those concerns reflected either that the board member was not impartial or that he had become a witness. Further, neither instance shows that the Homeowners were not allowed to offer evidence, were not allowed to offer their opinion, or attempted to question Leise on the record.

[12] A court reviewing an order of an administrative agency must determine whether there has been due process of law;

and this includes an inquiry into the jurisdiction of the agency, whether there was reasonable notice and an opportunity for fair hearing, and whether the finding was supported by evidence. *Ashby v. Civil Serv. Comm.*, 241 Neb. 988, 492 N.W.2d 849 (1992). See, also, *Crown Products Co. v. City of Ralston*, 253 Neb. 1, 567 N.W.2d 294 (1997) (in proceedings before administrative agency or tribunal, procedural due process requires, among other things, opportunity to present evidence and hearing before impartial board). As an appellate court performing a review of the record for due process, we are positioned not to judge the wisdom of the Planning Board's decision, but to ensure that an aggrieved party had the opportunity to be heard. The Homeowners had that opportunity. Certainly, another board may have allowed more time than allotted here, but the amount of time devoted is not as relevant as the independence of the inquiry. In particular, for us to find error, the record must reflect an actual bias rather than mere disagreement. Based on our review of the record, we find that the Homeowners were provided due process.

## VI. CONCLUSION

For the aforementioned reasons, we dismiss for lack of jurisdiction the portion of the Homeowners' appeal addressing the rezoning and special use permit, and we further vacate the district court's order in that regard for lack of jurisdiction. However, we affirm the district court's order in regard to the conditional use permit.

AFFIRMED IN PART, AND IN PART
VACATED AND DISMISSED.